## THE PEOPLE *vs.* CALL.

Although every larceny includes a trespass, and cannot exist unless there has been a taking from the possession of another, yet where one having only the *care, charge* or *custody* of property for the owner, converts it, *animo furandi*, it is larceny; the possession, in judgment of law, remaining in the owner until the conversion.

So, where the holder of a promissory note, having received a partial payment from the prisoner, who was the maker, handed it to him to endorse the payment, who took it away and refused to give it up; held that the possession remained in the owner, the prisoner acquiring only a temporary charge or custody for the special purpose; and that his subsequent conversion, the jury having found it felonious, was larceny.

In such a case, it is not essential that a felonious intent should exist when the prisoner received the note. It is enough if he converted it *animo furandi*.

The holder of a note made by a principal debtor and sureties, by an arrangement with the principal, suffers the signature of one of the sureties to be erased; the note is still valid against such principal.

CERTIORARI to the Columbia general sessions. The prisoner was convicted, in the general sessions, in June, 1844, of grand larceny, in stealing a promissory note. The note was for the payment of $315,44 and interest, and was made by the prisoner, who was the principal debtor, and three other persons as his sureties, promising jointly and severally, and was payable to the complainant Corns, on demand, and dated the 25th of March, 1842. It appeared that some time before the commission of the alleged offence, T. A. Carle, one of the makers, having become dissatisfied with remaining longer surety on the note, an arrangement was made between Corns, the holder, and the prisoner, by which the latter placed in the hands of Corns a deed of land, to hold until the note should be paid; and Corns consented that the name of Carle should be cancelled, which was accordingly done by the prisoner in the presence of Corns, by drawing lines across the name with a pen.

On the trial, Corns was examined on the part of the prosecution, and testified to the foregoing facts. He also testified that on the first day of April preceding the trial, he called on the

prisoner at his house in Ancram, for payment of the note, who said he was unable to pay it then, but would do so in a few weeks, and that he thought he could get and pay him fifty dollars at that time. The witness declined to receive a partial payment of the principal, but offered to take a year's interest, which was then due, (the first year's interest having been paid;) and the prisoner accordingly paid him $22,08 for a year's interest, and the witness took the note from his pocket with a view to endorse the payment, but remarked that if there was not a pen and ink handy, he would make the endorsement when he got home. The prisoner, however, said he had a pen and ink, and the witness handed him the note which he took into an adjoining room and sat down at a table, and apparently wrote on the back of the note, the door between the rooms being open. He then returned into the room where the witness was, with the note in his hand, and walked out at an outside door and went out of the sight of the witness. The witness remained in and about the house for about an hour looking and inquiring for the prisoner, without being able to see him, or find where he was; but subsequently, before he returned home, he met him in the road, and demanded the note. The prisoner refused to give it up, and said that neither the witness or any one else should ever have it again; but he offered to give the witness his own note for the amount, which he refused to receive. There was no other evidence in the case.

The prisoner's counsel requested the court to instruct the jury that there was no sufficient evidence to authorize a conviction; but this was declined.

The court then charged the jury that if any offence was proved, it was a case of constructive larceny; that in order to convict the prisoner, they must be satisfied that at the time he received the note from the complainant, he had a felonious intent to convert it to his own use and defraud the complainant; that if, from the facts, they came to that conclusion, they should convict him; otherwise not.

In relation to the cancelling of the name of Carle, the court charged, that inasmuch as this was done with the consent of

The People *v.* Call.

the prisoner, and in fact by him, it did not invalidate the note as against the prisoner.

The prisoner's counsel excepted to the charge, and to the refusal to charge as he requested.

The jury rendered a verdict of guilty, and a bill of exceptions was tendered and signed.

*E. P. Cowles,* for the defendant.

*T. Miller,* (district attorney,) for the people.

*By the Court,* BEARDSLEY, J. The objection that this note was without value, and therefore could not be the subject of a larceny, cannot be sustained. Carle, whose name was erased from the note, was a surety for the prisoner. The latter assented to the erasure, and cannot be allowed to set it up in discharge of himself. As the note was still binding upon the prisoner, saying nothing of the other signers, it had value, and therefore might be the subject of a larceny.

According to the evidence, as stated in the bill of exceptions, the note was handed to the prisoner for a special purpose, that is, to endorse upon it a payment which had then been made. He appeared to be making the endorsement, but then folded up the note and with it left the house.

That the note was thus converted to his own use, by the prisoner, with an intention to defraud the owner, seems hardly to have been a contested fact on the trial. The charge assumes, as the law clearly requires, that a felonious intent should be found by the jury; for without it the prisoner should be acquitted. This intent is an essential element in the crime of larceny, and it must exist at the time of the taking; for if that was lawful, no subsequent appropriation of the property, however fraudulent the intent may be, will constitute this crime. (2 *Stark. Ev. Philad. ed.* 1842, *p.* 606; *The People* v. *Anderson,* 14 *John.* 294; 4 *Black. Comm.* 232; *Roscoe's Cr. Ev.* 533, 541; *Banke's case, Russ. & Ry. C. C. Rep.* 441:

this case is stated in a note to *Rex* v. *Goodbody*, 8 *Carr. &· Payne*, 665.)·

As every larceny includes a trespass, the taking must be from the possession of another person. But here it is necessary carefully to discriminate between what constitutes, in law, a possession of property, and that which amounts only to its care and charge.

A servant has the charge, but not the possession, of his master's goods. The possession is in the master, and the servant may commit larceny by converting the property, with which he is thus entrusted, to his own use. This principle applies to servants, strictly so called, as it also does to apprentices, clerks and workmen of every description, who are employed in the care and management of the owner's property, under his immediate supervision and control. The rule is thus stated by East: " It is a clear maxim of the common law, that where one has only the bare charge or custody of the goods of another, the legal possession remains in the owner, and the party may be guilty of trespass and larceny in fraudulently converting the same to his own use. Thus, a butler may commit larceny of plate in his custody, or a shepherd of sheep. The same of a servant entrusted to sell goods in a shop. This rule appears to hold universally in the case of servants, whose possession of their master's goods by their delivery or permission is the possession of the master himself." (2 *East's P. C.* 564; *and see p.* 682; 2 *Hale's P. C.* 506; *Rex* v. *Bass*, 1 *Leach*, 285; *Rex* v. *Chipchase*, 2 *id.* 805; 2 *Stark. Ev.* 610; *Reg.* v. *White*, 9 *Carr. & Payne*, 344; *Reg.* v. *Harvey, id.* 353; *Rex* v. *Jackson*, 2 *Moore*, 32; *Roscoe's Cr. Ev.* 545; 4 *Black. Comm. by Chitty*, 231, *and notes, pp.* 230, 231.)

Where possession of the property is obtained by one as a bailee or purchaser, although by trick and fraud, the case stands on other grounds, but which need not now be stated. The note was not received by the prisoner as a bailee, òr a purchaser, but for the mere purpose of doing for the holder what he was about to do for himself. The endorsement would be the act of the holder, although made by the hand of the prison-

er.   It was to be done under the immediate direction and control of the owner, and could only be made by the prisoner as servant or agent of the person for whom he was acting.   As the note was thus received by the prisoner as a servant of the holder, the legal possession was not changed; the prisoner was in charge of the note while making the endorsement, but the owner still had possession.

It was unnecessary, therefore, that the jury should have found the existence of a felonious intent, when the prisoner received the note.   If it came upon him after the note had been received, and while he was engaged in making the endorsement, or subsequently, and was carried into effect by converting the property to his own use, it was larceny.   The charge, therefore, was not strictly correct, in requiring the jury to find the *animus furandi* at the time when the note passed into the prisoner's hands; it was enough that it existed while he held it as servant to the owner.   A felonious conversion under such circumstances was, in law, a felonious taking from the owner.

The charge of the court virtually required the jury to find a felonious intent at the time of conversion, as it did expressly at the time the prisoner received the note.   The last requisite of the charge was erroneous; but it was an error which could not prejudice the prisoner.   It required the jury to find more than the law made necessary to warrant his conviction of the offence; but of that he cannot complain, and a new trial should be denied.

New trial denied.