# STATE OF MINNESOTA

## *vs.*

# MICHAEL MCCARTEY.

The failure of a sufficient number of the persons who have been regularly selected and summoned as grand jurors, to appear when called in court, presents a case of "deficiency of grand jurors," within the meaning of *section* 10, *chap.* 107, *General Statutes.*

The facts that an indictment is endorsed "a true bill," the endorsement signed by the foreman, and the indictment properly filed, are evidence that the indictment has been "*found*" by a grand jury.

The entitling of an indictment in a county to which other counties are

State of Minnesota v. McCartey.

attached for judicial purposes, rather than in all the counties so attached together, is a defect of form merely.

A motion for a continuance is addressed to the sound discretion of the court.

All the petit jurors of a regular panel for a term being discharged by the court from further attendance, there is an *entire absence of jurors of the regular panel*, so that a special venire may properly be issued under *sec.* 17, *ch.* 64, *Gen. Stat.*

The sheriff to whom the special venire in this case was issued, while serving the same, selected jurors with reference to the trial of this case, "made inquiries concerning the opinions and bias of persons" relative to this case, and summoned, and omitted to summon, such persons as jurors, according as he became satisfied with the information received upon such inquiries. *Held*, that though such conduct upon the part of a sheriff is reprehensible, it does not furnish ground of challenge to the panel.

Instance in which the possible injurious influence of testimony of doubtful admissibility was held to have been sufficiently guarded against by the charge of the court.

A person may be guilty of simple larceny although he obtains the goods, (alleged to have been stolen,) from and through another person, whose relation to the owner of the goods is such that his acts in reference to the goods make him an embezzler, and guilty of *constructive* larceny under *sec.* 23, *ch.* 95, *Gen. Stat.*

Application of familiar rules as to admissibility of testimony.

Whether questions which are entirely irrelevant to the issue in a case, but which are asked for the purpose of discrediting a witness with a jury, shall be allowed or not, rests in the sound discretion of the court.

An objection to such questions for immateriality may properly be made by the prosecuting attorney.

Defendant's counsel requested the court to charge that, if the jury believe from the testimony in the case that a certain witness, who testified adversely to defendant, has wilfully sworn falsely respecting any one material transaction, then the jury should give no weight to his testimony whatever, but should lay all his testimony out of the case and not consider it ; *Held*, that the request was properly refused, and *Held*, further, that the court did not err to defendant's prejudice in instructing the jury that, if they believe that said witness had wilfully sworn falsely respecting any one material transaction, then the jury should give no weight to his testimony, except as to facts about which his statements were corroborated by other testimony. ·

The court having charged that a certain witness who testified against defendant was an accomplice, and that his testimony required corroboration, was

requested by defendant to charge that, if the jury deem that the question of guilt or innocence rests upon their finding of any one particular fact, then the jury are not warranted in finding that fact upon the testimony of such witness alone. *Held*, that the court did not err in refusing to charge in the language of such request, nor, instead of giving the same, in explaining to the jury what constituted the gist of the offence charged, and instructing them that the corroborative evidence or suspicious circumstances should bear upon the same Where an instruction has been once plainly and fully stated to the jury, and there is no reason to suppose that it is not understood, there is no occasion to repeat it, or to give its substance in the form of a further instruction. But if such further instruction be asked, and the court decline to give the same, it should decline in such a manner as not to mislead the jury into the belief that the instruction is refused because it is not law, instead of because already given.

At a general term of the district court for Hennepin county, the defendant and one Jerry McCartey were jointly indicted for larceny, the indictment being entitled in the county of Hennepin, and charging that the defendant and Jerry at the city of Minneapolis " did take, steal, and carry away ten barrels of flour, being then and there the property of, and in the possession of one William S. Judd and one George A. Brackett," partners as Judd & Brackett. A challenge to the panel of the grand jury was overruled, and a motion was made and denied to quash the indictment, on the ground that it was not entitled in any court having authority to try the same, and on the ground that no minutes of the proceedings or records of the grand jury, showing that they had found such indictment, were ever filed in the court. The defendants then pleaded not guilty, and elected to be tried separately. Jerry was tried and acquitted, and it appearing that all the regular panel of jurors had either been jurors on the trial of Jerry, or had been challenged and rejected on that trial, and would be liable to be rejected for actual bias in the present case if challenged by either party, and the defendant and his counsel consenting that the jurors of the regular panel be discharged, they were accordingly discharged and a special venire was ordered, return-

State of Minnesota v. McCartey.

able on a day of the same term to which day the trial of this defendant was postponed.

The cause being called on the day fixed for trial, the defendant asked for a continuance until the next general term, on the ground of the illness of a material witness, which motion was denied. The defendant thereupon challenged the panel of petit jurors summoned on the special venire, but the challenge was overruled, and the trial proceeded.

It appeared from the evidence of the prosecution, that the defendant bought the flour he was charged with stealing, from one John E. Young, a miller in the employ of Judd & Brackett, and having charge of their flouring mill during the night time, and that the purchase was made at night at the mill. W. S. Judd, and Harrison Williams, the foreman of the mill, testified that Young had no authority to make sales. Young, himself, being called as a witness for the state, testified that he made the sale, and that he had previously made sales under similar circumstances to Patrick and Thomas Irwin, by whom defendant was first introduced to him. The witness testified as to various conversations and transactions with the Irwins, and in the course of his testimony on this point, the following question was put to him by the court: "You say these parties would ask you if you were alone, state the manner in which they would ask that question."

One Seelye, a police officer, testified as a witness for the prosecution, and Patrick Irwin testified as a witness for the defence.

The counsel for the defendant requested the court to charge among other things, the following: "11th, If the jury believe that there is an arrangement between the witness Young and the parties who are prosecuting this case, to the effect that he shall be permitted to go free, if he shall testify so as to secure the conviction of the other persons charged with

these offenses, or any of them, then the witness, Young, would have a strong motive to color his testimony against the defendant, and the jury should weigh his testimony with caution."

" 12. The fact that the witness, Young, has never been arrested since the alleged commission of the offense, is a circumstance tending to show that such an arrangement as is referred to in the last request, has been made with him, and is a fact that the jury should consider in weighing his testimony."

" 13. The testimony of one who claims to be an accomplice, is unsafe and dangerous to act upon, and is admitted only from necessity ; and a jury should not convict upon such testimony alone, nor unless there is other satisfactory evidence tending to convict."

These instructions were severally refused.

The defendant was convicted, and brings the case into this court by appeal.

The exceptions taken at the trial, and the points made by counsel upon the argument, are fully stated in the opinion.

WM. LOCHREN and W. W. MCNAIR, for Appellant.

F. R. E. CORNELL, Attorney General.

*By the Court.*—BERRY J.—I. The failure of a sufficient number of the persons, who had been regularly selected and summoned as grand jurors, to appear when called in court, presented a case of "deficiency of grand jurors" within the meaning of *section* 10, *ch.* 107, *Gen. Stat.* The defendant's challenge to the panel was therefore properly overruled

II. The facts that the indictment is endorsed "A true bill," the endorsement signed by the foreman, and the indictment properly filed, are evidence that the indictment has been ·*found*" by the grand jury. *Ch.* 108, *sections* 57, 60, *Gen. St.*

State of Minnesota v. McCartey.

. The indictment should have been entitled of the counties of Hennepin and Manomin instead of being entitled as it was of the county of Hennepin only, (*Laws* 1867, *ch.* 112, *sec.* 1;) but the defect was one of form merely, and could not have prejudiced any "of the substantial rights of the defendant upon the merits." *Gen. St. ch.* 108, *sections* 10, 11. The motion to set aside the indictment was well denied.

III. There was no error in refusing the continuance prayed for. There was no proper evidence before the court of the sickness of the witness on account of whose alleged inability to attend the trial the continuance was asked.

The defendant's affidavit states that defendant is *informed and believes* that such witness is sick, &c., and the only other evidence of such sickness is the *unsworn* certificate of a physician. And besides this, an application for a continuance is addressed to the sound discretion of the court (*Allis vs. Day*, 14 *Minn.* 517,) whose action is not reviewable unless abuse appears, as is not the case here.

IV. All the petit jurors of the regular panel for the term having been discharged by the court from further attendance, there was an *entire absence of jurors of the regular panel*, and, by *sec.* 17, *ch.* 64, *Gen. St.*, when this occurs from "any cause," a special venire may be issued, as was done in this instance.

The objections to the manner in which the sheriff to whom the special venire issued, selected and summoned the jurors, and to his inquiries in reference to the "opinions and bias of persons relative to this cause," (although if such objections are based on *facts* the sheriff's conduct is reprehensible,) do not furnish ground for "a challenge to the panel," which "can be founded only on a material departure from the forms prescribed by law in respect to the drawing and return of the jury." *Gen. Stat., ch.* 116, *section* 4. *Sec.* 17, *ch.* 64, *Gen. St.*, under which the special venire was issued, prescribes no forms

except that a special venire shall issue to the sheriff of the county, commanding him to summon from the county at large a number therein named of competent persons to serve as jurors during the term, and there is no claim that these directions were not complied with.

There was therefore no error in overruling the challenge to the panel of petit jurors.

V. It would seem that the testimony of Judd & Williams in respect to the rules adopted by the proprietors of the mill forbidding millers to sell flour or feed in the night time was hardly proper to be received, unless it was made to appear that knowledge of such rules was brought home to the defendant. But if this testimony was improperly received, any injurious influence which it could possibly exert on the minds of the jury was, we think, guarded against by the charge of the court, by which they were instructed that, unless they found that the defendant was informed that Young, (the miller from whom defendant obtained the alleged stolen property,) had no authority to sell such property, the defendant was not guilty of any wrong in purchasing from him. The jury are bound "to receive as law what is laid down as such by the court," (*Gen. St. ch.* 116, *sec.* 11,) and presuming, (as we deem it proper to do in this case,) that the jury received and acted upon the law given to them by the court, we think the evidence referred to could not have prejudiced the defendant.

VI. The indictment in this case charges the defendant with simple larceny.

It is insisted that the evidence in the case tended to show only that defendant was an accessory to an embezzlement by Young, the miller, and that it was therefore improperly admitted under the indictment.

Admitting that the evidence tended to show an embezzlement by Young, and admitting further that the defendant

upon the evidence might very properly be regarded as having *aided* Young, or as having been an accessory before the fact to the embezzlement, we think the evidence also fairly tended to show that the defendant had committed larceny.

It is argued, (as we understand defendant's counsel,) that larceny necessarily involves a trespass, and that there was no trespass here, because the flour taken was in the possession of Young by virtue of his employment, and defendant took it with Young's consent.

The evidence however showea that Young was a mere servant of the proprietors of the mill, so that he had only a *custody* of the flour, the *possession* being in his masters. 2, *Bishop's Cr. Law*, § 829 *et seq. People vs. Call*, 1 *Denio*, 120. It will hardly be claimed that there was no evidence tending to show that the flour was taken without the consent of such proprietors, and without any authority from them. If so taken, the taking of it involved a trespass, notwithstanding the servant who had the custody thereof consented to the taking. 2 *Bishop's Cr. Law*, § 827 ; *Regina vs. Sheppard*, 9, C. & P. (38. E. C. L.) 121; *Rex vs. Small*, 8 C. & P. (34 E. C. L.) 46.

VII. We are unable to perceive upon what tenable ground the testimony of Young as to transactions and conversations with Pat. Irwin was admitte d.

It was not shown that the defendant was present at the same, or had any connection with them, nor, so far as we can discover, is there anything in the testimony which tends to show that the defendant and Irwin were confederates in the transactions testified to.

We think the court erred in receiving this testimony against defendant's objection, and we cannot say that it did not operate upon the minds of the jury unfavorably for the defendant.

VIII. There was no error in excluding the questions addressed to Young on cross-examination by defendant, as to

whether he paid over the money received by him for flour and feed to his employers, Judd & Brackett, and if so, when and under what circumstances.

The receipt of the money by Judd & Brackett from Young could not operate by way of ratification or otherwise, so as to divest the defendant's acts of their criminality, as appears to be contended, nor are we able to conjecture any purpose for which answers to the questions could have been important or useful to the defendant; and without some statement as to the object for which the questions were asked, we cannot say that the court was not justified in disallowing them.

IX. Defendant upon cross-examination asked Young: "Did you not steal a gun from George A. Brackett since these cases have arisen?"

This was a question such as is not unfrequently permitted to be put to a witness upon cross-examination for the purpose of discrediting him with the jury, although entirely irrelevant to the issues in the case. As to questions of this character the rule is, that their allowance or disallowance rests in the sound *discretion* of the presiding judge. *McArdle vs. McArdle*, 12 *Minn*, 98; *Hathaway vs. Crocker*, 7 *Met.* 266; *Great Western Turnpike Co. vs. Loomis*, 32, *N. Y.* 132; *Le Beau vs. People*, 34 *N. Y.* 230; *Sheppard vs. Parker*, 36 *N. Y.* 518; 1 *Gr. Evid.*, § 449; and as in other cases, unless there is a plain abuse of such discretion, its exercise will not be disturbed in an appellate court. *Great Western Turnpike Co. vs. Loomis; Le Beau vs. The People, supra.* We see no reason for supposing that there was any abuse of discretion in this instance.

What is said in reference to the interrogatory under consideration is, as will be noticed, applicable to several of the other points made by defendant in this case.

It is further urged by defendant, that the option was with

Young to answer or decline to answer the interrogatory, and that the prosecuting attorney had no right to object to its being put.

Where a question, the answer to which may criminate a witness, is allowed to be put, the rule seems to be that the right of declining to answer it is personal to the witness. But that rule has no application here. The objection in this instance was not that the answer might criminate the witness, but that it would be immaterial, and this objection might well come from the prosecuting attorney. *Gt. Western Turnpike Co. vs. Loomis, supra*

X. The question addressed to Young by the court was too broad, in that it inquired about the conduct of parties other than the defendant, and who acted, so far as appears, independently of. the defendant, and the question was not as definite as it should have been in reference to the time when the occurrences inquired about took place. We do not, however, perceive any foundation in the question or its answer for the objection that the former called for an " opinion " of the witness.

XI. There was no error in excluding the question addressed to Williams, as follows : " Did Judd and Brackett make any arrangements with Young last summer as to employing him again in their mill ?" The question standing alone without any statement as to the purpose for which it was asked, or as to how it was to be followed up, had no apparent relevancy or importance in the case.

XII. We discover no foundation, whatever, for the charge of error in permitting Seelye to testify to another offense on the part of defendant distinct from, and subsequent to, that charged in the indictment. The case stated does not show that evidence of any such offense was received.

XIII. The testimony of Seelye as to what was said and done

by Jerry McCartey and Young, when defendant was not present, was improperly received. So far as the defendant was concerned, what was *said* was mere hearsay, and we think it was calculated to prejudice the jury against defendant.

XIV. The object of the questions put to Patrick Irwin upon cross-examination by the district attorney, must have been to discredit him by showing that he had been engaged in some unlawful transaction in carrying wheat from the mill, from which the flour in this case was taken. The testimony elicited does not seem to us to possess any particular force or importance for any purpose, but to have been quite immaterial; and if so, we cannot conceive how it could have been prejudicial to the defendant. If, however, it had any tendency to discredit the witness by showing him to have been guilty of criminal acts, it was, as we have before had occasion to remark, admissible in the discretion of the court, a discretion not to be reviewed here unless it has been abused, which is not made to appear in this case.

XV. The counsel for defendant requested the court to charge the jury: " That the indictment in this case charges the defendant with stealing, taking and carrying away flour, the property of Judd and Brackett. There is no evidence tending to prove this charge, and the jury are directed to render a verdict of not guilty." The defendant contends that the court erred in refusing to instruct the jury as requested, because the evidence in the case " attempts only to connect the defendant with an embezzlement." The defendant's position in reference to the instruction is in substance identical with that which we have already disposed of in considering his sixth point. We deem it unnecessary to add anything to what we there said. The instruction was rightly refused.

XVI. The defendant's counsel further and seventhly requested the court to charge that, " if the jury believe from the testi-

State of Minnesota v. McCartey.

mony in the case that witness John E. Young has wilfully sworn falsely respecting any one material transaction about which he testified, then the jury should give no weight to his testimony whatever; the jury then should lay all his evidence out of the case, and not consider it further." The court refused to so charge, but did charge the jury that, "if they believe that the witness, John E. Young, had wilfully sworn falsely respecting any one material transaction about which he testified, then the jury should give no weight to his testimony, except as to facts about which his statements were corroborated by other testimony." There was no error in the refusal, and if the charge was not accurate, it was because it was too favorable for defendant. The tendency now seems to be to hold, that the credibility of testimony of the kind referred to in the instruction, is to be left to the jury. *Dunlop vs. Patterson*, 5 *Cowen*, 247; *Roth vs. Wells*, 29 *N. Y.*, 492; *Dunn vs. The People*, 29 *N. Y.*, 523; *Brett vs. Catlin*, 47 *Barbour*, 407; *Gilton vs. Gorham*, 4 *McLean*, 402.

XVII. The court having charged in substance that Young, (the witness,) was an accomplice, and that his testimony required corroboration, was requested by the defendant to charge tenthly that, "if the jury deem that the question of guilt or innocence rests upon their finding of any one particular fact, then the jury are not warrranted in finding that fact upon the testimony of the witness Young alone."

The court refused to charge in the language of the request, but explained to the jury what constituted the gist of the offense, and said the corroborative evidence or suspicious circumstances should bear upon this point. We perceive no error here. Instead of leaving it to the jury to determine what facts the question of guilt or innocence depended upon, the court seems to have informed the jury what the legal elements of the offense charged were, and to have added in

substance that, as to such elements, the testimony of the accomplice Young required corroboration.

XVIII. Defendant's eleventh and twelfth requests for instructions to the jury were properly refused, the former because there was no evidence in the case to which it was applicable, and the latter because no such inference as it expresses could as a matter of law be drawn from the non-arrest of Young.

XIX. There was no error in refusing defendant's thirteenth request.

As the court suggested in declining to give the same, whatever of importance was embraced in it was covered by instructions before given, which were particularly referred to. Where an instruction has been once plainly and fully stated to the jury, and there is no reason to suppose that it is not understood, there is no occasion to repeat it or to give its substance in the form of a further instruction.

If such further instruction be asked, the court may proper.y decline to give it, though, as in this case, it should decline in such manner as not to mislead the jury into the belief that such instruction is refused because not law, instead of because it has once been given. What is said in *Selden, Withers & Co. vs. Bank of Commerce*, 3 *Minn.* 181, to the contrary upon this point, appears not to have been necessary in the case, neither does it commend itself to our judgment.

For the errors indicated the judgment is reversed and a new trial awarded.