CHARLES BROOKS, Plaintiff in Error, *v*. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

In order to constitute the crime of robbery in the first degree, as defined by the statute (2 Rev. Stat., 677, § 55), it is not necessary that the one from whose person or in whose presence the property is taken should be the actual owner thereof. As against the robber, he is the owner of all goods in his possession and custody, whereof he is robbed.

(Submitted May 3, 1872; decided May 21, 1872.)

ERROR to the General Term of the Supreme Court in the first judicial department, to review judgment affirming conviction of plaintiff in error of the crime of robbery in the first degree.

The plaintiff in error, together with one John Williamson, was convicted of robbery in the first degree, for taking certain articles of clothing in the presence of Margaret Purcell, against her will, and by putting her in fear of immediate injury. There were two counts in the indictment, one charging the goods to be the property of Margaret, the other that it was the property of John Purcell, her father.

Margaret Purcell was a child eleven years of age, the daughter of John and Sarah Ann Purcell. On the evening of the 7th of April, 1871, the parents left home to attend church, leaving the child Margaret the sole occupant of the apartments. Between nine and ten o'clock, and while the parents were absent, the defendants in the indictment came to the apartments, and while Williamson held a pistol to Margaret's head, threatening to blow her brains out if she moved, the plaintiff in error, Brooks, took from a trunk, in the presence and sight of Margaret, the property described in the indictment. The defendants each took a bundle of the property and left the house together. The child testified that she was in great fear.

The property taken was articles of clothing, etc., purchased by John Purcell for his wife.

*William F. Kintsing* for the plaintiff in error.  The child in charge of the goods had no property in them, and, therefore, the evidence would not support the indictment.  (*Regina* v. *Green*, 37 E. L. &. Q., Ct. of Crim. Aps ; *Rex* v. *Hutchinson*, 1 Russ & Ryan ; 2 East, P. C., 652, 653 ; Stat. 3 W. & M., chap. 9, § 1 ; *Hite* v. *The State*, 9 Yerger, 198 ; *People* v. *Bennett*, 37 N. Y., 117.)  To constitute robbery, under the statute, the property must be taken from the person or in the presence of the owner.  (3 R. S., 5th ed., 956.)  The property was the separate property of the mother, and should have been laid as such.  (*Ackley* v. *Tarbox*, 31 N. Y.)  Where a person is convicted, and an indispensable element is wanting, there being no proof in the case of its existence, the court will review on writ of error, although no valid exception was taken.  (*McCann* v. *The People*, 6 Parker's Cr. R., 629 ; *Davis* v. *Spencer*, 24 N. Y., 390 ; Hilliard on New Trials, 353, § 36.)

*John R. Fellows* for the defendants in error.  A party in possession of a chattel is, to all intents, the legal owner, except as to the rightful owner, and especially as against any wrong-doer or criminal trespasser.  (*Rex* v. *Deakin*, 2 Leach, 4th ed., 862 ; *People* v. *Bennett*, 37 N. Y., 117, and cases therein cited ; *State* v. *Addington*, 1 Bailey, 310 ; 3 R. S., 5th ed., 956, § 57.)  The age of the person in possession of the goods cannot be material.  (*People* v. *Kendall*, 25 Wend.)

PECKHAM, J.  The prisoner was indicted for robbery in the first degree, in feloniously taking property of complainant's daughter from her person by violence.  The second count charged it to be the property of her father.  The testimony showed that the girl's parents lived on the third floor of a house, and upon this occasion left the house in the girl's sole charge, and in their absence this robbery was committed by putting this girl in bodily fear.

Under the facts disclosed, the father, and not the mother, was the owner, though the things had been purchased with

his money for the mother. (*Crane* v. *Williams* 7 Gray, 337; *McCormick* v. *Penn. Cen. R. R.*, Ante, p. 303.) It is insisted that the daughter is not the owner, and hence, the indictment cannot be sustained. The statute defines robbery in the first degree as follows: " Every person who shall be convicted of feloniously taking the personal property of another from his person or in his presence and against his will, by violence to his person, or by putting such person in fear of some immediate injury to his person, shall be adjudged guilty of robbery in the first degree." (2 R. S., 677, § 55.)

By reference to the notes of the revisors, it seems it was not their intention to alter the common law as to the owner-ship of the property taken. They say it is " defined accord-ing to 2 East, ch. 16, §§ 125, 129; the material ingredient in this offence being that it is done against the will, by vio-lence or by fear of immediate injury." (5 R. S., Edm. ed., 548.) But there is nothing in the definition in East that requires the property taken to belong to the person robbed.

The elementary writers generally insert no such require-ment. (1 Hale Pl. Cr., 532; 4 Blac. Com., 241; 2 Russ. on Cr., 4th ed., 98, p. in mar., 867; Hawk., 95, ch. 34.)

Lord COKE defines it to be a " felonious taking away of a man's goods from his person; and it is called robbery because the goods are taken, as it were, *de la robe*. But sometimes it is taken in a larger sense." (Co. Litt., 288, *a.*)

This is not a careful definition, as it omits all idea of force or violence, or of putting in fear in the taking. The subject is not there discussed, and the definition is a simple definition of larceny from the person. By the common law, robbery is larceny from the person or in his presence, accompanied by vio-lence or by putting in fear. (See the writers before cited; 1 Leach Cr., 4th ed., 195; *Com.* v. *Clifford*, 8 Cush., 215; 2 Russ. on Cr., 101, 4th ed.)

No case is referred to; and I have found none requiring that the property taken should belong to the person robbed.

On the contrary, in a late case, a prisoner was indicted for robbing one of another's property, and no objection on that

ground was taken to the indictment. (*Regina* v. *Rudick*, 8 Car. & P., 237.)

I am satisfied that it was not necessary, to constitute robbery at common law, that the property taken should belong to the person robbed.

Unless our statute has made a change in this respect, without seemingly intending it, this conviction was clearly right.

The language, "taking the personal property of another" (that is, of some one other than the prisoner) "from his person, or in *his* presence," taken literally, declares that the person robbed must own the property taken; that it must be his. But this does not mean that it should be absolutely his. It means that the property taken must be from the person, or in the presence of the person, robbed. That is the only point of this provision; not that it shall necessarily belong to that person. Most sound rules for the interpretation of statutes would give these words this meaning.

There was no evil which such a change would remedy. Hence none could have been aimed at. The only evil result, as all must admit, would be produced by the change claimed in the statute by the prisoner's counsel.

If all property found in the actual custody of the person robbed be not held to be his property, under this act, then, whenever the master of the house be absent, the house may be robbed with impunity, so far as robbery is concerned; it is larceny, but no robbery. So if a servant be entrusted with money to deposit in a bank, and is robbed on his way, it is larceny merely, but no robbery. In my opinion, though such a construction is within the letter it is not within the spirit or purpose of the act; and, so, not within the act. A purpose to change the common law should not be imputed, unless that purpose be plainly evinced. It is the policy of our law to enact general statutes as far as may be. England has several more statutes on this subject. (See 2 Russ on Cr., 4th ed.) Such a construction as is claimed for the prisoner would, as we have seen, require another statute.

If wrong in this construction, then the question arises, was

this girl the owner of the property taken? This point is largely discussed in the books.

On the one side it is held she is not the owner, upon the ground that she is the mere servant of the owner, her father; that her possession is his; and that, therefore, she has no possession and no special property in the things taken. (2 East Pl. Cr., 652, 653, and cases there cited; *R.* v. *Green,* 37 Eng. L. and Eq. R., 598.) The last is very nearly this case. On the other side it is held, that a person having the actual, as against the constructive, possession of the owner, having the charge of the property, may be regarded and stated as the owner as against all wrong-doers.

Such is the principle of the case of *R.* v. *Taylor* (1 Leach, 395), where a coach glass of a gentleman's coach, standing in a coach master's yard, was stolen; and it was charged and held to be the property of the coach master. So where property was stolen from a coach box on its journey, held, it might be laid as the property of the driver. For though, "as between him and the proprietors of the coach, on this prosecution, the law considers the driver to have the bare charge of the goods belonging to the coach; but, on a charge against any other person for taking them tortiously from driver's custody, he must he considered as the possessor." (*Rex* v. *Drakin,* 2 Russ on Cr., 94, in margin.) So property in clothes of child may be laid as in father or child. (2 id., 84, 95, marg. p.) So of goods stolen at an inn, the property may be laid in the landlord or in the owner. There are many other cases where it may be charged in either of several parties.

In a case in this court one judge held, in substance, that property might be laid as in the actual possessor; and another judge held the opposite, and the point was not decided. (*People* v. *Bennett,* 37 N. Y., 117; see *State* v. *Addington,* 1 Bailey, 310; *Owen* v. *State,* 6 Hump., 330, in point.)

The only objection stated in the books to a wrong owner being named is that the prisoner might be indicted again on a charge of larceny from the true owner. If our statute be

construed as claimed by prisoner's counsel, such an objection could have no force. Because, if the property did not belong to the person robbed, then there is no robbery. It must be charged as his, or there could be no indictment for this offence.

I see no objection to holding the law to be as declared in the coach driver's case, that the girl is the owner as against all tort-feasors; but as between her and her father or master, he had the possession and title. Clearly, if the legislature intended, by this act, to say that the person robbed should be the owner of the goods taken, then they could have intended no more than that he should be the owner as against the robber; that he should have the actual custody or charge of the property taken; the actual possession as against the wrong-doer; but the mere charge as against the real owner in any prosecution by him.

In other words, the act intended that the person robbed should be regarded as the owner, as against the robber, of all goods whereof he was robbed.

He must have a possession or custody of the goods or they could not be taken "from the person or in his presence by violence to his person, or by putting him in fear of some immediate injury to his person."

This construction secures all his rights to the prisoner. The other repeals the law of robbery as to every house in New York city and in the State as soon as its master leaves it. The latter result I do not think the law-makers intended. In my opinion the property may be laid as belonging either to the actual owner or to the person robbed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.