## SUPREME COURT — SPECIAL TERM — CHAUTAUQUA COUNTY.

### September, 1917.

## THE PEOPLE v. OTTO BRENNEAUER.

(101 Misc. 156.)

INDICTMENT—ACTION TO DISMISS, DENIED—GRAND JURY—LARCENY—EVIDENCE—MOTIONS AND ORDERS.

Where by an indictment drawn in the usual common law form defendant was charged in the first count with the crime of grand larceny in the first degree in having stolen from a corporation of which he was sales manager certain blue prints worth more than $500, and the grand jury was warranted by the evidence before it in finding that defendant when he received said prints from the company's service engineer, who had the care and custody of them, intended to appropriate them to his own use, the count is good as charging larceny at common law, and a motion to dismiss the indictment will be denied.

The second count of the indictment charging defendant with criminally receiving stolen property, first degree, in that he did feloniously buy, receive and have the same blue prints then and there well knowing them to have been feloniously stolen, dismissed as not supported by the evidence before the grand jury.

MOTION to dismiss indictment.

*Louis L. Thrasher*, for motion.

*Warner S. Rexford*, assistant district attorney, opposed.

COLE, J.:

The grand jury of Chautauqua county presented an indictment against the above named defendant charging him in the first count thereof with the crime of grand larceny in the first degree in the usual common law form, in having stolen from the

Gurney Ball Bearing Company " eight blue prints, formulae, designs and documents, numbered B-1 to B-11, of the value of more than $1,000.00."

In the second count the indictment charges the said defendant with the crime of " criminally receiving stolen property, first degree," in that he " did feloniously buy, receive and have " the same property " then and there well knowing the said goods, chattels and personal property to have been feloniously stolen."

An order has been granted permitting the defendant to inspect the minutes of the grand jury for the purpose of moving to dismiss the indictment, and a motion is now made for such dismissal based upon the evidence before the grand jury as disclosed by such minutes.

It is the duty of the grand jury to find an indictment " when all the evidence before them taken together is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury."

If the evidence falls below this standard the indictment may and should be dismissed. (People v. Glen, 173 N. Y. 403; People v. Sexton, 187 id. 511; People v. Sweeney, 213 id. 37.)

It is now urged by the defendant that the indictment should be dismissed for the following reasons:

*First.* That the evidence is insufficient to support either the crime of grand larceny, committed by any means or in any manner, or the crime of criminally receiving stolen property.

*Second.* That in any event the evidence is insufficient to support the crime of grand larceny *as charged in the indictment.*

The facts disclosed before the grand jury and upon which the indictment rests are briefly as follows:

The Gurney Ball Bearing Company is a corporation engaged in the manufacture of ball bearings for use in automobiles, with its factory at Jamestown. Its sales of its products during the two years last past approximate $2,000,000 annually. It had in its possession in its engineering department certain blue

prints and drawings containing valuable manufacturing data essential in the making of its Gurney Ball Bearing known as the " Radial Thrust Bearing.". These blue prints and data and secret information contained therein represented what it had taken many years to develop. There are only six or eight competitors of the company in this country. The deduction is well warranted by the evidence that these blue prints because of the data which they contained and the information which they afford would have been of great value to its competitors, as it had been to the company. Its chief engineer, who had developed this ball bearing and these blue prints through a period of several years, testified before the grand jury " in a month any ball bearing manufacturer — any of these six or eight ball bearing manufacturers in this country — by the use of that information could manufacture that bearing. At present they cannot manufacture it because they have not that information." He testified that the value of these blue prints would be " at least more than $500."

The defendant has been in the employ of the company for five of six years as its sales manager. The company's president testified before the grand jury: "Mr. Brenneauer was sales manager of the company, receiving a very large salary; a confidential position; one of trust."

Soon after he entered the employ of the company he asked its chief engineer, Mr. Gurney, for the information contained in these blue prints and repeatedly made the same request, but it was never given to him. At about the last holiday season he obtained a vacation and went to New York ostensibly to visit his wife. He came back from New York on January 3, 1917, and on his return went to the office and asked Mr. Barringer, the service engineer of the company, if he could get for him (the defendant) a set of the Gurney Radial Thrust Ball Bearings, and the engineer showed him the book in his (the engineer's) immediate possession, and the defendant took therefrom the

blue prints numbered B-1 to B-11 and put them in his pocket. Later in the same day at a hotel in Jamestown he told Mr. Barringer that he intended leaving the company, and tried to induce Mr. Barringer to leave also, and requested that the conversation be treated strictly confidential. He took these blue prints to New York and after being there about two weeks returned, leaving them in his apartment at New York in the possession of his wife.

Upon the defendant's return from New York about two weeks later the president of the company, Mr. Smith, learned from Mr. Barringer of the fact of the defendant having taken these blue prints, and at once went to the office of the company and found the defendant in the act of leaving the office. When questioned about the blue prints he at first denied any knowledge concerning them, but on being pressed said he would produce them, and on further pressure admitted that they were with his wife in New York, and he then authorized their delivery to a representative of the company.

The charge in the second count of the indictment, of criminally receiving stolen property, is not sustained by the proof and this count in the indictment should be dismissed. If the property was stolen by any one, it was by himself, and he could not be convicted of criminally receiving stolen property from himself. (People v. Brien, 53 Hun, 496.)

It is urged that the evidence fails to show that the blue prints possess any value other than nominal, and that the element of value, essential to the crime of grand larceny in the first degree, is not sustained by the proof.

In the light of the testimony before the grand jury that body was warranted in finding that those prints were worth upwards of $500. The chief engineer of the company so testified. He gave his reasons therefor, to wit, that any manufacturer of ball bearings with these prints, and the information which they contained, could in thirty days manufacture this same bearing.

The learned counsel for the defendant urges that the prints contained *information* only and that *information* as such possesses no intrinsic value, and that the paper on which it was entered possesses only nominal value. It appears, however, that the information and data when entered on these prints possessed and were of great value to a manufacturer of ball bearings. I conclude that the element of value is well established by the evidence. The grand jury were warranted by the evidence in finding that the defendant intended to deprive the company of this property, or of the use and benefit thereof. The crime of grand larceny in the first degree is established by the evidence, and in the absence of explanation or contradiction (which of course may be afforded upon a trial) the grand jury were warranted in finding an indictment for the crime and in the degree charged. The defendant's learned counsel urges, however, that the crime *as charged* is unsupported by the evidence. The count charging grand larceny is in the usual common law form, charging that the defendant " feloniously did steal, take and carry away " the property described. At common law and under the statute in this State prior to the adoption in 1881 of the Penal Code (now known as the Penal Law), the felonious taking necessary to the crime involved a trespass. Where the property was voluntarily parted with, even though as a result of fraud or false pretenses, the crime of larceny was not committed and where the *possession* was voluntarily parted with, in the absence of any trick, fraud or device to procure such possession, there was no larceny. If the owner was induced to part with the *property as distinguished from its possession merely, by false representations,* such act constituted the crime of obtaining property by false pretenses, and not larceny. (2 Bish. Crim. Law, § 813; People v. Miller, 169 N. Y. 339; Smith v. People, 53 id. 111.)

If property lawfully in the possession of another as clerk or servant of any private person or copartnership, or as officer,

agent, clerk or servant of an incorporated company, was lawfully appropriated to his own use by such person, such appropriation constituted embezzlement under the statute in force in this State prior to the adoption of the Penal Code, and such statute with slight variations follows the provisions of the act of 39 George III, chapter 85, from which it was in some measure taken.

Neither of these acts, to wit, the acquisition of the property under false pretenses, nor the appropriation by a clerk, servant or agent having possession thereof by virtue of his employment, etc., constituted larceny. Upon the adoption of the Penal Code all these distinctions were swept away and these several crimes were comprehended under the definition of larceny.

By section 528 of the Penal Code (now section 1290 of the Penal Law) larceny may now be committed:

*First.* By the same acts or means as before the Penal Code.

*Second.* By the means which formerly constituted embezzlement.

*Third.* By what was formerly the separate crime of false pretenses.

*Fourth.* By what formerly amounted to no more than a simple breach of trust.

By section 275 of the Code of Criminal Procedure the indictment must contain: "A plain and concise statement of the *act* constituting the crime."

By section 279: "The crime may be charged in separate counts to have been committed in a different manner, or by different means."

But where the crime is charged to have been committed by a particular means or in a particular manner, the charge is not supported by proof that it was committed by other and different means, or in some other manner.

Since the adoption of the Penal Code it has been repeatedly held that an indictment charging larceny in the common law form is not supported by proof showing the crime of larceny by

false pretenses or by what formerly constituted the crime of embezzlement. (People v. Dumar, 106 N. Y. 502; People v. Miller, 169 id. 339; People v. Cohen, 148 App. Div. 205; People v. Dilcher, 38 Misc. 91.)

No false representations were used in this case.

The foregoing conclusions therefore lead us to the inquiry, do the facts appearing before the grand jury constitute the crime of larceny under the law as it existed before the adoption of the Penal Code? If so, the crime *as charged* is supported by the evidence. Or do those facts show the crime of larceny by what formerly constituted either embezzlement or a simple breach of trust?

As already stated, at common law a trespass was an essential element of a felonious taking. (2 Bish. Crim. Law, § 811.)

This simple rule, however, was involved in many refined and technical distinctions. Where the owner was induced to part with the *possession* (as distinguished brom the title) to the property by means of a trick, fraud or device, by one who took it *animo furandi* and appropriated it, this was not a voluntary parting with the possession and the crime of larceny was therefore complete. (2 Bish. Crim. Law [7th ed.], § 813; People v. Miller, 169 N. Y. 339; People v. Call, 1 Den. 120; Smith v. People, 53 N. Y. 111.)

In the present case there is no evidence that the defendant obtained the property by means of any trick, fraud or device. The essential difference between the crime of larceny at common law by one who is a servant, and the crime of embezzlement as defined by our statute (2 R. S. 678) prior to the adoption of the Penal Code is this: If the servant had *possession* of the property by virtue of his employment (as distinguished from the bare *custody* or *care* thereof) upon appropriation thereof to his own use he committed the crime of embezzlement, and not of larceny. If, however, the servant had the bare *care* or *custody* of the property as distinguished from its possession, or if they were in his

8

possession for a specified purpose, and he took the same *animo furandi* and converted it to his own use, he was guilty of larceny. The possession of the property under such circumstances is the possession of the master. This distinction is clearly recognized and maintained by text writers and by an unbroken line of decisions in our own State. (2 Bish. Crim. Law [7th ed.], §§ 824, 827, 832; People v. Call, 1 Den. 120; People v. Bennett, 37 N. Y. 117; People v. McDonald, 43 id. 61; Phelps v. People, 72 id. 365; People v. Wood, 2 Park. Cr. 22.)

The rule is thus stated by Mr. Bishop in his learned treatise on Criminal Law (Vol. 2 [7th ed.], § 824): "There is a difference between a custody and a possession. For example: Goods in the custody of a servant are in the possession of the master. The servant may, therefore, commit larceny of them; as if a clerk in a store feloniously removed goods from it, this is larceny; *  *  *  And, generally, where one has the bare charge or care of effects which belong to another, whether his relation to the owner be that of a servant or not, 'the legal possession  *  *  *  remains in the owner and the party may be guilty of trespass and larceny in fraudulently converting the same to his own use.'"

And again at section 832 of the same volume: "Possibly under some circumstances, if a servant receives from a third person a thing for the master, not the master's before; in a case where the receipt is, as to other persons, a receipt in law by the master; a second person, taking the thing by delivery from the first, may commit larceny of it as against the master, into whose possession this second servant cannot deny that the thing has come."

And again at section 836: "If a servant, having an article in his custody, and intending to steal it, does, for the purpose of theft, anything with the article, forbidden by his duty, he commits larceny."

The rule as above stated is maintained in its integrity and without modification in the decisions in this State above cited.

In the case at bar the *possession* of the property taken was in the company. Barringer, a mere employee, to wit, the company's service engineer, had the *care* and *custody* of these prints. His possession was clearly the possession of his master, the company.

The grand jury were well warranted in finding that when the defendant received these prints from Barringer he intended to appropriate them to his own use. They were delivered to him by another servant. His possession acquired under such circumstances was the possession of his master, the company, and when he took the property under such circumstances *animo furandi* and thereafter appropriated them to his own use he committed the crime of larceny as it existed at common law and before the adoption of the Penal Code.

The learned counsel for the defendant urges that the defendant had *access* to these prints at all times, and that he was lawfully in possession thereof. "Access" to the property certainly does not necessarily carry with it *possession*. The clerk in a store has *access* to the clothing on the shelves and to the cash register and to the property which it is his duty to sell, but if he appropriates it with felonious intent it has never been doubted that he commits the crime of larceny at common law. So in the case at bar the defendant's access to these prints does not help him. These prints were in the possession of his master. Such possession as he got for the purpose of stealing them was his master's possession, and when he thereafter in fact carried out his original intent by taking them away and converting them to his own use he committed the crime of larceny at common law.

My conclusions in this matter are summarized as follows:

*First*. When the competent evidence before the grand jury

is insufficient to establish the crime charged, the indictment should be dismissed.

*Second.* The charge in the second count of the indictment, for criminally receiving stolen property, is not supported by the evidence before the grand jury.

*Third.* The charge of grand larceny in the first degree contained in the first count cannot be supported by evidence showing the crime to have been committed by what formerly constituted either false pretenses or embezzlement.

*Fourth.* The evidence appearing before the grand jury is sufficient to sustain a charge of grand larceny at common law.

An order may be entered dismissing the second count in the indictment and denying the motion to dismiss the first count thereof.

Ordered accordingly.