CHARLES H. PHELPS, PLAINTIFF IN ERROR, *v.* THE PEOPLE, DEFENDANTS IN ERROR.

*Grand larceny — jurors — competency of, under chapter* 475 *of* 1872 — *indictment — special property in subject of larceny — ownership, how alleged — when variously alleged — election between different counts — custody and possession — distinction between.*

A juror who testifies that he has heard the case talked about; has read part of a former trial; has expressed an opinion upon what he has read, and will commence the trial with an impression on his mind — but that such impression will not influence his verdict upon the evidence — is a competent juror under chapter 475 of 1872.

An indictment which avers the felonious taking and carrying away of the personal property of another, to wit, a bill of exchange or draft directing the payment of money, and alleging it to be of the value of $7,500; setting out such draft *in hæc verba*, or fully describing it, is good and not open to the objection, that it is not averred that there was money due upon the instrument alleged to have been stolen or secured thereby, or remaining unsatisfied thereon, or which might, in some contingency, be collected thereon.

In such an indictment, the prosecuting officer is not bound to elect under which count he will proceed, when the ownership of the draft is variously charged in the several counts.

It is the settled rule in this State, that an indictment is sufficient if it aver all facts necessary to render the charge intelligible in its legal requisites, so as fully to inform the accused of the offense he is called upon to answer.

In indictments for larceny, whenever a person has a special property in the subject of the larceny, or holds it in trust for another, ownership may be alleged in either.

The prisoner was employed by the State treasurer as a clerk merely, but had the care and custody of the State securities and funds for a specific purpose — that of caring for them and placing them in deposit for his principal, the State treasurer. *Held*, that the felonious conversion by him to his own use of a draft coming into his hands as such clerk, constituted theft.

WRIT of error to the Court of Oyer and Terminer in and for the county of Albany.

The plaintiff in error was indicted at a Court of General Sessions, by the grand jury of Albany county, in the month of November, 1873, for the crime of grand larceny, in stealing a written instrument for the payment of the sum of $7,500, made and drawn by S. C. Lewis, as secretary of the Farmers and Mechanics' Savings Bank of Lockport, upon the Central National Bank of the City of

New York, payable to the order of S. Curtis Lewis, as county treasurer of Niagara county, and indorsed by Mr. Lewis: "Pay Nelson K. Hopkins, Comptroller, or order," and further indorsed as follows:

"Pay order of State Treasurer.
                "HENRY GALLIEN,
                        "*Second Deputy Comptroller.*"

The case was sent to the Oyer and Terminer for trial, and the cause tried at a term of that court held in the month of October, 1874, Mr. Justice WESTBROOK presiding. Phelps was convicted and sentenced to imprisonment at hard labor in the penitentiary of Albany county for five years. The case came before this court upon a writ of error, allowed by Mr. Justice WESTBROOK.

The indictment contained forty-eight counts. In some a copy of the instrument alleged to be stolen was set forth. In the others a description of it was given. Some of the counts described it as a "bill of exchange;" some described it as a "draft;" some described it as an "order;" some described it as an "evidence of debt." Some of the counts alleged it to be the property of the "State of New York;" others charged it to be the property of "Thomas Raines;" some charged it to be the property of "Thomas Raines, as treasurer of the State of New York;" some charged it to be the property of "Nelson K. Hopkins;" some charged it to be the property of "Nelson K. Hopkins, as comptroller of the State of New York;" and in some of the counts it is charged to be the "moneys, goods, chattels, and personal property of some person whose name is to the jurors aforesaid unknown." The first count in the indictment was as follows:

The jurors for the people of the State of New York, in and for the body of the city and county of Albany, being then and there sworn and charged, upon their oath, present, that Charles H. Phelps, late of the first ward of the city of Albany, on the 11th day of August, in the year of our Lord 1873, in the city of Albany, in the county of Albany, with force and arms, one bill of exchange, made and drawn by S. C. Lewis, secretary of the Farmers and Mechanics' Savings Bank of the city of Lockport, a corporation incorporated under the laws and statutes of the State of New

York, upon and directed to the Central National Bank of the city of New York, to the effect, and in substance, among other things, as follows, that is to say :

$7,500.00.

                FARMERS AND MECHANICS' SAVINGS BANK.

                                No. 3026.

                        LOCKPORT, N. Y., *August* 7, 1873.

Pay to the order of S. Curtis Lewis, county treasurer, seventy-five hundred dollars.

                                S. C. LEWIS, *Secretary.*

To CENTRAL NAT'L BANK, New York.

Which bill of exchange was stamped with a two-cent United States internal revenue stamp, and was indorsed to the effect and in substance, among other things, as follows, that is to say :

Pay Nelson K. Hopkins, Comptroller, or order.

                        S. CURTIS LEWIS, *Co. Treas.*

Pay order of State Treasurer.

                        HENRY GALLIEN, 2d *Dep. Comp.*

Of the value of seven thousand five hundred dollars, of the moneys, goods, chattels and personal property of the State of New York, then and there being found, feloniously did steal, take and carry away, to the great damage of the said State of New York, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

The twenty-fifth count in the indictment was as follows :

And the jurors aforesaid, upon their oath aforesaid, do further present, that Charles H. Phelps, late of the First ward of the city of Albany, on the 11th day of August, in the year of our Lord 1873, in the city of Albany, in the county of Albany, with force and arms, one bill of exchange, dated on the 7th day of August, in the year of our Lord 1873, for the payment of the sum of seventy-five hundred dollars, made and drawn by S. C. Lewis, as secretary of the Farmers and Mechanics' Savings Bank, of the city of Lockport, a corporation incorporated under the laws and statutes of the State of New York, upon and directed to the Central National Bank of the city of New York, a corporation

incorporated under the laws and statutes of the United States, pay able to the order of S. Curtis Lewis, county treasurer, and indorsed to the effect and in substance, among other things, as follows, that is to say:

Pay Nelson K. Hopkins, Comptroller, or order.

S. CURTIS LEWIS, *Co. Treas.*

Pay order of State Treasurer.

HENRY GALLIEN, *2d Dep. Comp.*

Of the value of seven thousand five hundred dollars, of the moneys, goods, chattels and personal property of the State of New York, then and there being found, feloniously did steal, take and carry away, to the great damage of the said State of New York, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

The defendant was, in February, 1872, appointed, by Mr. Raines, treasurer of the State of New York, a clerk in the treasurer's office, in which capacity he acted with the title of cashier. The other facts in this case are fully set forth in the opinion.

*William J. Hadley*, for plaintiff in error. It was not felony at common law to steal a mere chose in action. In order to bring a case within the Revised Statutes for stealing commercial paper, there must be some money due thereon, or secured thereby, and remaining unsatisfied, or that might, in some event or contingency, be collected thereon. (2 R. S., 679 [marg.], [3d ed., 765].) Our Revised Statutes, which declare it to be larceny to steal instruments for the payment of money, are taken from, and are nearly in the same words, as the act of 2 George II, chapter 25, section 3. (*People* v. *Loomis*, 4 Denio, 380.) All of the precedents of indictments drawn under that act contain averments that the money secured by the instrument remains due and unsatisfied. In an indictment for stealing a bank note for ten pounds under the same act, it is averred "the said sum of ten pounds, payable and secured by and upon the said note, then and there remaining due and unsatisfied," etc. (3 Ch. Cr. L., [marg.] 974, 975 [5th Am. ed., by Perkins, 974, 974 *a*]; see *Rex* v. *Richard Craven*, Russ. & Ry.

Eng. Cr. Cas., 14; *Rex* v. *Fanny Chard*, Russ. & Ry. Eng. Cr. Cas., 488; *Rex* v. *Henry Clark*, Russ. & Ry. Cr. Cas., 181; *Rex* v. *Benjamin Walsh*, Russ. & Ry., 215; *Rex* v. *Benjamin Pooley*, Russ. & Ry., 12; 1 Arch. Cr. Pl. [marg.] 86, [Waterman's 6th ed., 85–2]; 2 Arch. Cr. Pldgs., 391, 392 [Waterman's 6th ed., 391–1, 391–2, 391–3, 392]). In plain words, it must be a genuine and effective instrument when stolen, or the crime of larceny cannot be committed. It was so under the act of George II, and such is the true meaning of the Revised Statutes. (*People* v. *Loomis*, 4 Denio, 380; *Stewart* v. *Com.*, 4 Serg. & Rawle, 194; Barbour's Cr. Law, 688, 689.) In a criminal prosecution, nothing is taken by intendment against the accused. (*Wood* v. *The People*, 53 N. Y., 511; *Johnson* v. *The People*, 55 id., 512; and see 3 Greenleaf on Ev., § 10.) To constitute a good indictment for larceny, it is absolutely necessary that the name of the true owner of the thing stolen (if known) should be stated. The extent of the powers of executive officers is to be found in the laws, which declare what they are to do, and how they are to do it. (*The Floyd Acceptances*, 7 Wall., 667.) If the State ever acquired any interest in, or right of property to the draft, it should have been averred to be the property of the people of the State of New York. If the comptroller had no power or authority to accept this instrument in payment of the State tax, then it follows that he had no power or authority to certify such payment to the State treasurer, or to charge him with the amount. No rule of the criminal law is better settled than that to constitute larceny, the alleged owner of the thing stolen must have either the actual or constructive possession of it at the time of its conversion. In all indictments for larceny, the articles alleged to be stolen must be averred to be " of the goods and chattels " of the right owner, if known. The name of the owner of this instrument, being either known or capable of being ascertained by inquiry, a conviction upon the counts alleging an unknown ownership was clearly illegal. (3 Chitty Cr. L. [5th Am. from 2d Lond. ed.], 949; 1 Chitty Cr. L., 211–213; 2 East's Pl. Cr., 651; Roscoe's Cr. Ev., 640 [Sharswood's 5th Am. ed.]; 1 Bishop on Cr. Pro., §§ 546–581; 1 Whar. Cr. Law, §§ 251, 256, 258 [7th ed.]; 2 Whar. Cr. Law, 1820 [*c*], 1821 [*d*].) One who has the actual

possession of my goods, by my delivery for a special purpose, as a carrier who receives them in order to carry them to a certain place, or a tailor who has them in order to make me a suit of clothes, or a friend who is intrusted with them to keep for my use, cannot be said to steal them, by embezzling of them afterward. (1 Hawkins' P. C., bk. 1, ch. 33, §§ 2 and 3; 1 Hale's Pl. Cr. [1st Am. ed.], 667, [marg. 668]; 2 Russ. Cr. L., 95 [4th Am. ed. by Sharswood]; Roscoe's Cr. Ev., 584, 594, 595, 596 [5th Am. ed.].) It follows, therefore, that the prosecutor must be in the actual or constructive possession of the property, at the time of the taking. (*People* v. *McDonald,* 43 N. Y., 63; *Hildebrand* v. *The People,* 56 id., 394, 396, 397.) An important and well established rule on this subject, growing out of this doctrine of trespass is, that, as against the custodian, the owner (Raines) must at some time have had the possession, either actual or constructive, independent of his possession (*i. e.,* of the possession of the custodian), and that the charge of larceny will not lie against the latter in any case, where the only possession of the owner, is that of the custodian. (43 N. Y., 64 [citing and approving *Rex* v. *Walsh,* 4 Taunton, 258; same case reported Russ. & Ry. Cr. Cases, 215; *Rex* v. *Sullens,* 1 Moody's Cr. Cases, 129; *Com.* v. *King,* 9 Cush., 284].) Property in possession is defined by Sir William Blackstone to be when a man has both the right to, and the occupation of the property. (2 Bl. Com., 389, 396; see *People* v. *Bennett,* 37 N. Y., 128, opinion of DAVIS, Ch. J.; *Coats* v. *The People,* 22 id., 245; Roscoe's Cr. Ev., 594, 595, 601 [5th Am. ed., by Sharswood]; 2 East's P. C., 568, 569, 570, 577, chap. 16, §§ 16, 17; *People* v. *McDonald,* 43 N. Y., 62; *Com.* v. *King,* 9 Cush. R., 284; *Waite's Case,* 1 Leach Cas. in Cr. L., 33 [3d ed.]; *Bazeley's Case,* 2 Leach, 973 [3d ed.]; 2 Bishop on Crim. Law, §§ 828, 832, 855; *Wilson* v. *The People,* 39 N. Y., 461; *Smith* v. *The People,* 53 id., 111; Roscoe's Cr. Ev., 601 [5th Am. ed., by Sharswood].) Where one clerk receives money on account of his master, which in the due course of business should be handed over by him to another clerk (the prisoner), to be delivered to the master, and the prisoner fraudulently appropriated it, it was expressly held that it was not larceny, but embezzlement. (*Regina* v. *Orlando Masters,* 1 Denison Reserved Cr. Cas., 339 [marg. 333]; 5 Brit.

Cr. Cases ; see 3 Coke's Inst., 107 ; 3 Chitty's Cr. L., 920 *a* [5th Am. ed., by Perkins] .) *Wait's Case.* Held not larceny fraudulently to misappropriate an East India bond, deposited with the directors of the Bank of England, and delivered to the prisoner as cashier of the bank. (2 East's P. C., 570, chap. 16, § 17 ; same case reported 1 Leach's Cas. in Cr. L., 33 [3d ed.] ; 1 Moody Cr. Cas. [2 Eng. Cr. Cas.] 160 ; 1 id., 473 ; 1 id., 129 [Eng. Cr. Cas. 129], referred to, and approved by CHURCH, Ch. J., 43 N. Y., 62 ; *Rex* v. *Hawtin*, 7 Carr. & Payne, 281 [32 Eng. Cr. L., 613]·; *Rex* v. *Thomas*, 9 id., 741 [38 Eng. Cr. L., 314] ; *Reg.* v. *Gorbutt*, 1 Dearsley & Bell, Crim. Cas., 166 ; *Reg.* v. *Samuel Essex*, 1 id., 371 ; *Reg.* v. *Abraham Green*, 1 id., 323 ; *Commonwealth* v. *King & Mellen*, 9 Cushing, 284.) Why is it that the *bona fide* holder of lost goods cannot be held guilty of larceny, though he instantly conceals them, and denies their finding ; immediately converts them to his own use *animo furandi*, and manifests by his subsequent conduct, every characteristic of the conscious thief ? Every indictment for a larceny must allege that the goods were feloniously taken, as well as feloniously carried away. (*People* v. *Anderson*, 14 Johns., 294, and authorities there cited ; *People* v. *Cogdell*, 1 Hill, 94 ; *Reg.* v. *Thurborn*, 1 Dennison Cr. Cas., 387 ; *Reg.* v. *Preston*, 2 id., 353 ; *Rex* v. *Elizabeth Leigh*, 2 East P. C., 694 ; *Rex* v. *Mucklow*, 1 Moody Cr. Cas., 166 ; *Reg.* v. *Deaves*, 11 Cox Cr. Cas., 227 ; *Wilson* v. *The People*, 39 N. Y., 459.) If it be conceded that Phelps was the mere custodian of this draft, yet the charge of larceny will not lie against him for stealing it as the property of Thomas Raines, for Raines never had any possession of it, either actual or constructive, independent of its possession in the hands of Phelps. (*People* v. *McDonald*, 43 N. Y., 62 ; 2 Bishop's Cr. Law, §§ 827, 828 ; *Reg.* v. *Rudick*, 8 Carr. & Payne, 237 [34 Eng. Cr. L., 709] ; *Rex* v. *Taylor*, 1 Leach C. L., 395 [3d ed.] ; see also 1 Hawkins P. C., chap. 33, §§ 2 and 3 ; 1 Hale, 667 ; Roscoe's Cr. Ev., 587, 594, 595, 596, 601 [5th Am. ed.] ; 2 Russ. on Cr., 95 [4th Am. ed.] ; 3 Ch. Cr. L., 920 *a ;* 2 East's P. C., 665, chap. 16, § 101 ; 2 Whar. Am. Cr. L. [7th ed.], §§ 1818, 1830 *b*, 1846 *b*,· 1861, 1861 *b ;* 2 Bishop on Cr. L., §§ 799, 802, 823, 828, 837, 855.) To constitute larceny of a written instrument, the paper stolen must be an effective, operative,

legal instrument at the time it is taken. The draft in question was not such an instrument. It was sent by the county treasurer, in violation of his duty, which required him to pay the money into a State bank of deposit, to the credit of the State treasurer. The comptroller had no right or power to accept commercial paper (except such certificate of deposit), or to charge the State treasurer with the amount. If Gallien had authority to transfer this draft by indorsement to the State treasurer, yet until it was indorsed by the State treasurer, or by his authority, there was no person who was authorized to receive the money upon it, or who had power to compel its payment. It never was indorsed by the State treasurer. The prosecution claimed that it was stolen before the indorsement by Phelps was placed upon it. The indorsement, " Pay C. Hudson, Esq., cashier, or order," was proved to be in the handwriting of Phelps. And Phelps was proved not to have had any authority to make it. Until it was so indorsed, it was not an effective instrument for any purpose. (*Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Morgan* v. *Bank of State of N. Y.*, 1 Duer, 435; S. C., 1 Kernan, 404; *Doubleday* v. *Kress*, 50 N. Y., 410.) It is no answer to say that it would have been a valid and effective instrument if the State treasurer had indorsed it. Who can assume to say that the State treasurer ever would have given it validity by his indorsement? The law required that this county treasurer, and who was also the maker of this banker's draft, should pay the money for the State tax into a bank of its own designation, to the credit of the State treasurer, and to send a certificate of such deposit to the comptroller. Upon receipt of such certificate, it was made the duty of the comptroller to certify such payment to the State treasurer. Had not the State treasurer the clear legal right to insist that the law which defined his duty should be strictly complied with, and to refuse to take, or to indorse a banker's draft? If the owner part with the property, there can be no felony in the taking however fraudulent the means by which such delivery was procured. (2 East's P. C., chap. 16, §§ 102, 103, p. 668; also chap. 16, § 113, p. 693; *Wilson* v. *The People*, 39 N. Y., 461; *The People* v. *McDonald*, 43 id., 62; *Smith* v. *The People*, 53 id., 111; *Hildebrand* v. *The People*, 56 id., 394.) By the cases which we have now cited, the maxim of the common law relating to the fraudu-

lent conversion by a servant to his own use of the goods of the master, appears to be sufficiently explained and established. But it should be observed, that in all these cases it was considered that the property stolen was sufficiently received into the possession of the master, before the taking by the servant. And this leads to the consideration of a material distinction, respecting the possession of the master, namely, that the property will not be considered as sufficiently received into his possession where it has merely been delivered to the servant for the master's use. The ground of which doctrine appears to be, that in such case, there can be no tortious taking in the first instance, and consequently no trespass, and we have seen that, without a trespass, there can be no larceny. (2 Russ. on Crimes [marg. 204], [4th Am. ed. by Sharswood, 203]; *Reg.* v. *White*, 9 Car. & Payne, 344; *Rex* v. *Paradice*, 2 East. P. C., 565.) For distinction between a delivery to the servant by the master, and a delivery to the servant by a third person, for the master's use ; see (2 East P. C., 568, chap. 16, § 16 ; also p. 570, chap. 16, § 17, and cases referred to.) The court erred in refusing to charge : That if the jury believe that the draft in question came into the possession of the prisoner lawfully, and without fraudulent contrivance, and in the course of his employment as the money or receiving clerk of the treasury department, and that as such clerk he had the right to retain its possession for the purpose of, and until it was deposited in the State bank of deposit, he is not guilty of larceny in carrying it away and converting it to his own use. (2 East P. C., chap. 16, § 102, p. 668; chap. 16, § 103, p. 669; chap. 16, § 113, p. 693; chap. 16, § 92, p. 655; chap. 16, § 101, p. 665; chap. 16, § 114, p. 694; *Elizabeth Leigh's Case*; 2 Bishop's Cr. L., §§ 799, 828, 855; 2 Russ. on Cr. [marg. pag.], 109, 117, 118, 131, 132 [4th Am. Pa. ed., by Sharswood]; 2 Starkie's Ev. [marg. pag.], 832 [Boston, 2d Am. ed., 1828]; Roscoe's Cr. Ev. [marg. pag.], 595, 596, 597 [5th Am. Phila. ed., by Sharswood]; 3 Chitty Cr. L. [marg. pag.], 919, 920, 920 *a* [5th Am. N. Y. ed.]; *Rex* v. *Wait*, 1 Leach, 32 [3d ed.]; *Rex* v. *Bazeley*, 2 id., 793 [3d ed.]; *Rex* v. *Mucklow*, 1 Moody Cr. Cas., 160; *Reg.* v. *Thomas*, 38 Eng. C. L., 314 [9 Carr. & Payne, 741]; *Rex* v. *Smith*, 1 Moody Cr. Cas., 473; *Rex* v. *Sullens*, id., 129; *Rex* v. *Hawtin*, 32 Eng. Cr. L., 613 [7 Carr. & Payne, 279];

*Com.* v. *King & Mellen*, 9 Cush., 287, 288; *People* v. *Anderson*, 14 Johns., 296, 297.) The court erred in refusing to charge: That if the jury believe that, at the time the draft came into the hands or possession of the prisoner, he had no intent to steal it, he cannot be convicted of larceny, even though they find that he afterward formed the intent to steal it, and feloniously carried it away. (*Wilson* v. *The People*, 39 N. Y., 461; *People* v. *McDonald*, 43 id., 62; *Smith* v. *The People*, 53 id., 113; *Hildebrand* v. *The People*, 56 id., 394; *Rex* v. *Mucklow*, 1 Moody Cr. Cas., 160; 2 East's Pl. Cr., chap. 16, § 92, p. 655, and authorities before cited; 2 Russ. on Cr. [marg. p.], 118, 131, 132 [4th Am. Pa. ed., by Sharswood]; *Reg.* v. *Thristle* [2 cases], 2 Car. & Kir., 842 [61 Eng. C. L.]; *Reg.* v. *Glass*, id., 395.) The court erred in refusing to charge: That if the jury believe that the prisoner received the draft as one of the clerks in the treasury department, for the purpose of depositing it in the proper bank of deposit, and that the State treasurer never had any other possession of it than such possession by the prisoner, as a clerk in his office, he is not guilty of larceny, even though he carried it away and converted it to his own use. (*People* v. *McDonald*, 43 N. Y., 65; *Rex* v. *Walsh*, 4 Taunt., 258; S. C., Russ. & Ry., 215; *Com.* v. *King & Mellen*, 9 Cush., 284; *Rex* v. *Sullens*, 1 Moody Cr. Cas., 129; *Reg.* v. *Masters*, 1 Denison Cr. Cas. [marg. p.], 333; *Rex* v. *Wait*, 1 Leach [3d ed.], 33; *Rex* v. *Bazeley*, 2 id., 973.) Also in refusing to charge: That if the jury believed that the prisoner received this draft as money as receiving clerk of the State treasurer's office, for the purpose of depositing it in the proper bank of deposit, and that it remained in his lawful and actual possession down to and at the time he carried it away and converted it to his own use, he cannot be convicted of larceny. (2 East's Pl. Cr., chap. 16, § 92, p. 655; also chap. 16, § 16, p. 568, and *Wait's* and *Bazeley's* and *Bull's Cases* there cited; 2 Bishop Cr. Law, § 833; 2 Russ. on Cr. [marg. p.], 204 [4th Am., Phila. ed., by Sharswood]; 2 id., 118, 131.) Also in refusing to charge: That if the jury believed that this instrument was delivered into the hands of Mr. Phelps, for the special purpose that he should deposit it in the proper bank for the State deposits, he thereby acquired a right to

the possession of it; and that if he converted it to his own use, even with the intent to steal it, while it was in his possession as such clerk, as he is not guilty of a trespass when he first received it, he is not guilty of larceny by such conversion. (2 Russ. on Cr. [marg.], 118, 131, 132 [4th Am. Phila. ed., by Sharswood]; 3 Coke Inst., 98, 107, 108; 1 Hawk. P. C., chap. 33, §§ 2 and 3, p. 134; 2 East P. C., chap. 16, § 3, p. 554; chap. 16, § 16, p. 568; chap. 16, § 17, p. 574; Roscoe's Cr. Ev. [marg.] 595 [5th Am., Phila. ed., by Sharswood]; 2 Starkie's Ev. [marg.], 832 [2d Boston, Am. ed.]; 3 Chitty's Cr. L., 920 *a* [5th Am., N. Y. ed.]; *People* v. *McDonald*, 43 N. Y., 63; *Wilson* v. *The People*, 39 id., 461; *Hildebrand* v. *The People*, 56 id., 394.) The court erred in refusing to instruct the jury: That the prisoner cannot be convicted under any or either of the counts, which charge this instrument to be the property of some person, whose name is to the jurors unknown. (2 East P. C., chap. 16, § 88, p. 651; 3 Chitty Cr. L. [5th N. Y. ed.], 949; 1 id. [marg.], 213; 2 Russell on Cr. [4th Am., Phila. ed. by Sharswood], 162; Roscoe's Cr. Ev. [5th Am., Phila. ed. by Sharswood], 640.) The court erred in refusing to instruct the jury: That the statute which makes it felony to take and carry away written instruments for the payment of money, also declares what shall be the value of the instrument stolen. It declares that the money due on such instrument, or secured thereby and remaining unsatisfied, shall be deemed the value of the instrument stolen, and that the prisoner cannot be convicted under any or either of the counts in this indictment, as there is no averment or allegation in any of them that there was any money due on, or that remained unsatisfied on, the instrument charged to be stolen. (2 Arch. Cr. Pl. [6th N. Y. ed.], 391–2, 391–3, 392; *People* v. *Loomis*, 4 Denio, 380, 381, 382, 384; *Wood* v. *The People*, 53 N. Y., 511, 514; *Johnson* v. *The People*, 55 id., 512; 3 Greenl. Ev., § 10; *People* v. *Allen*, 5 Denio, 76; 1 Arch. Cr. Pl. [6th N. Y. ed.], 85–2.) For form of indictment under the act of parliament (2 Geo. II, chap. 23, § 3), which is in the same words as our Revised Statutes. (See 3 Ch. Cr. L. [5th Am. N. Y. ed.], 974, 974 *a* ; *Craven's Case*, 2 East Pl. Cr., 601; S. C., Russ & Ry. Cr. Cas., 14; *Fanny*

*Chard's Case*, id., 488, note *a; Rex* v. *Pooley*, id., 12; *Rex* v. *Walsh*, id., 215.)

*John M. Bailey*, district attorney, *Henry Smith* and *N. C. Moak*, for the defendants in error.    The act in regard to challenges of jurors in criminal cases (Laws 1872, vol 1, p. 1133), is constitutional and valid.    (*Stokes* v. *People*, 53 N. Y., 164, 171–173.)    The decision of the court upon the question of the jurors' competency was final.    (*O'Brien* v. *People*, 36 N. Y., 279; *Lowenberg* v. *People*, 5 Park., 423, 424; *State* v. *Pike*, 49 N. H., 406, 407; *Cooper* v. *State*, 16 Ohio St., 330–334; *State* v. *Millain*, 3 Nevada, 428–430; *Eberhart* v. *The State*, 47 Ga., 606; *People* v. *Brotherton*, 47 Cal., 395.)    The point that the indictment was defective because it did not allege any amount was due upon the instrument in question, or secured by it, and remaining unpaid thereon, was not well taken.    Each count in the indictment alleges that the instrument was "of the value of seven thousand five hundred dollars."    This allegation of its value was sufficient, and it was not necessary to plead the conclusion from the facts which showed that to be its value.    Our statute varies from the English (3 Chit. Cr. Law., 932).    The ancient strictness, in regard to criminal pleading, has been greatly relaxed.    (*People* v. *Bennett*, 37 N. Y., 120, 121; *Low* v. *People;* 2 Park. Crim., 40, 41; *People* v. *Rynders*, 12 Wend., 431, 432; *Holmes* v. *People*, 15 Abb. Pr., 159.)    The old forms were devised to oust the defendant of the privilege of clergy, and need not be followed (*People* v. *Rynders*, 12 Wend., 431), and have been expressly abolished by the statute which provides: " Sec. 52. No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be affected.    *   *   *   4. By reason of any other defect or imperfection, in matters of form, which shall not tend to the prejudice of the defendant."    (2 R. S., 728, § 52; 2 Edm. St., 751.)    The facts as to the making, the indorsement of the instrument, and its condition when stolen by the plaintiff in error, and its value being alleged, an allegation of the amount unpaid thereon, or secured thereby, would have been mere matter of form.    (*Tomlinson* v. *People*, 5 Park. Crim., 320.)    The indictment having alleged the making of the instrument, having set out a copy thereof *in hæc verba*, its indorsement by the

payee to the comptroller, the indorsement thereof by the deputy comptroller, and the value thereof, the facts were amply pleaded and the indictment good. (*People* v. *Loop*, 3 Park. Crim., 559; *Haskins* v. *People*, 16 N. Y., 344, 347, 348; *Quinlan* v. *People*, 6 Park. Crim., 9; *Low* v. *People*, 2 id., 37; *People* v. *Rynders*, 12 Wend., 431; *Holmes* v. *People*, 15 Abb. Pr., 154; *Wilson* v. *People*, 5 Park., 178; *Rosekrans* v. *People*, 5 N. Y. S. C., 467, 475; *People* v. *Clements*, 26 N. Y., 197, 198.) When the facts showing a certain conclusion are pleaded, the pleader is not obliged to allege the conclusion. (*Rex* v. *Sommerton*, 7 Barn. & Cress., 463.) The point that the Farmers and Mechanics' Savings Bank of Lockport had no right to issue the instrument in question was not well taken. Every instrument made by a corporation is presumed to have been legally issued. (*Mechanics' Bank* v. *Spring Valley, etc.*, 25 Barb., 419; *Nelson* v. *Eaton*, 26 N. Y., 410; *Conn., etc.*, v. *Cleveland, etc.*, 41 Barb., 9.) At common law the right of banking pertains to every member of the community. (Morse on Banking, 1; id., 4–6.) The bank had the incidental power of issuing drafts or orders for money on deposit in another bank. (*Curtis* v. *Leavitt*, 15 N. Y., 9; Morse on Banking, 4–6.) A corporation, in order to attain its legitimate objects, may deal precisely as an individual may who seeks to accomplish the same ends. (*Smith* v. *Law*, 21 N. Y., 298, 299.) Even had the instrument been *ultra vires*, the defendant cannot insist upon that objection. (*Parish* v. *Wheeler*, 22 N. Y., 494.) The objection that the draft could not be proven, because the indictment did not charge it to be the property of Curtis or the treasurer of Niagara county, was not well taken. When a check or draft is sent by mail, the title thereto remains in the sender until receipt thereof by the person to whom it is addressed (*Talbot* v. *Bank of Rochester*, 1 Hill, 295; *Currier* v. *Ins. Co.*, 53 N. H., 538), unless the creditor directs the sending by mail, when title vests in him on deposit in the post-office. (*Graves* v. *Am. Ex. Bank*, 17 N. Y., 207; *Currier* v. *Ins. Co.*, 53 N. H., 549.) Evidence upon what account the draft was sent, and also the letter accompanying it, was properly received. 1. It was proper to show upon what account the draft was sent in order to show that title, or, in any event, a special property passed to the State or the State officer. 2. To show that it was the draft

which the defendant himself credited to Niagara county upon the books of the State. The objections to the draft being read in evidence, upon the ground that it was charged in the indictment in various forms, and as the property of divers persons, was untenable for the reasons: The right to so charge is well settled. (*Davis v. People*, 56 N. Y., 95, 101; *La Beau v. People*, 33 How. Pr., 69; *Nelson v. People*, 5 Park., 39; *People v. White*, 55 Barb., 606, 611; *Osgood v. People*, 39 N. Y., 449, 451; *Kane v. People*, 8 Wend., 210, 211.) The defendant having been convicted on all the counts, if there was a single good count, the conviction was valid and will not be reversed. (*People v. Davis*, 56 N. Y., 95, 100; *Crichton v. People*, 6 Park. Crim., 363, 366, Ct. App.; S. C., 1 Keyes, 344; 1 Abb. Ct. App. Dec., 470; *La Beau v. People*, 33 How. Pr., 70; *Fraser v. The People*, 54 Barb., 306, 308; 1 Bish. Cr. Pro. [2d ed.], § 1015; 3 Whart. Crim. Law [7th ed.], §§ 3208, 3209.) There was but one offense, the stealing of the same instrument, charged in the several counts. The defendant's point, that neither the State, Hopkins nor Raines acquired any interest in, or title to, the instrument, was not well taken. The State, through its officers and agents, had the possession thereof, charged with the trust of either returning it to the sender, or obtaining the money thereon and crediting it to him. This was a sufficient interest or title as against a thief. (*People v. Sherman*, 2 N.Y. S. C., 528.) Whenever a person has a special property in a thing, or holds it in trust for another, the property may be laid in either. (*People v. Bennett*, 37 N. Y., 131.) The property stolen may be laid in a bailee or an agent, though not in a mere servant of the actual owner. (*Bennett v. People*, 37 N. Y., 124, 129–132; 2 Bish. Cr. Pro. [2d ed.], §§ 720–723; 2 Whart. Cr. L. [6th ed.], § 1818.) And one who steals from a thief may be convicted of stealing from the first thief. (*Ward v. People*, 3 Hill, 395; affirmed, 6 id., 144; *People v. Bennett*, 37 N. Y., 130–132; *Commonwealth v. Finn*, 108 Mass., 466.) And when property is in the hands of a public officer, it may be laid in him, or in the government or municipality of which he is an officer (*People v. Bennett*, 37 N. Y., 117, 126, 127), the officer being but a servant of the government or municipality he represents. (*Bennett v. People*, 37 N. Y., 128.) The point, that the property in the draft should have been laid in " the people of the State of New

York," and not in the "State of New York," was not well taken. Section 11, article 1, of the Constitution, refers to real estate only, leaving *personal property* not provided for. The statute expressly provides for offenses against the "property" of the State. "Sec. 35. Where the term 'person' is used in this chapter to designate the party whose property may be the subject of an offense, such term shall be construed to include the United States, this State, or any other State, government or country which may lawfully own any property within this State, and all public and private corporations as well as individuals." (2 R. S., 703, § 35; 2 Edm. St., 726.) The State is the corporation, the people the corporators. (2 Story on Const., §§ 1679–1686.) A crime is an offense against the people, the citizens in the aggregate. The title to the property in this case was in the State, the corporation. (*Texas* v. *White*, 7 Wall., 721.) The title is still in the State, the corporation. (*People* v. *Bennett*, 37 N. Y., 126.) The State is technically the corporation — the sovereignty. "The people of this State" is frequently interchangeably used for the term, "this State." (*People* v. *Bennett*, 37 N. Y., 126, 127, 128, 129; *Texas* v. *White*, 7 Wall., 721; *Collector* v. *Day*, 11 id., 124; *State of New York* v. *State of Conn.*, 4 Dallas, 1; 1 R. S., 65, § 3; 1 Edm. St., 79; 1 R. S., 172, §§ 13–17; 1 Edm. St., 172; 1 R. S., 179–181, §§ 1–17; 1 Edm. St., 180–182.) This being so, neither term would be improper. It has been held that a signature by a deputy, in the form of that in question, was valid. (*Miller* v. *Lewis*, 4 N.Y., 566, 567.) The deputy comptroller was an officer, *de facto*, and his acts as such were valid. (*Nelson* v. *People*, 5 Park. Crim., 39, 52; affirmed, 23 N. Y., 293, 296; *People* v. *White*, 24 Wend., 525; approved, 23 N. Y., 296; *Griffin* v. *Cunningham*, 20 Grat. [Va.], 44–49, reviewing the authorities, English and American.) Neither the victim nor the people are bound to guarantee a good title to the thief. (*Chipchase's Case*, 2 Leach [4th ed.], 699; 1 Hawk. Pl. Cr. [Curwood's ed.], 196; 3 Chit. Crim. Law, 932.) The objection that there was a variance because the indorsement, "State treasurer, by Charles H. Phelps, cashier," was not set out in the indictment, was not well taken. It was not necessary to set out an indorsement made after the draft was stolen by the defendant. (*Commonwealth* v. *Coe*, 115 Mass., 481, 500, 501; 3 Chit. Crim. Law, 974, note.) Evi-

## 416 PHELPS v. PEOPLE.

dence tending to prove any fact constituting an element of a crime charged in an indictment is competent, although it may tend to prove the prisoner guilty of some other crime. (*Weed* v. *People*, 56 N. Y., 628; *Copperman* v. *People*, 3 N. Y. S. C., 199; affirmed, 56 N. Y., 591; *Rex* v. *Moore*, 2 Carr. & Payne, 235; *Reg.* v. *Briggs*, 2 Moody & Rob., 199.) The statute which defines the crime of embezzlement (2 R. S., 678, § 59; 2 Edm. St., 698) does not apply to this case, for the reason that the word "person" therein is qualified by the word "private" which precedes it, and is not left to its general meaning as defined by section 35. (2 R. S., 703, § 35; 2 Edm. St., 726, *supra*; *Coats* v. *People*, 22 N. Y., 245.) The defendant, as clerk, had simply the care or custody of the State securities or funds for a fixed and specific purpose, that of deposit. He had not the possession, or the right of converting or disposing thereof. (*The United States* v. *Hutchinson*, 7 Penn. Law Jour., 365; 4 id., 211, bottom paging; 7 id., 366; 4 id., 212.) The correct distinction in cases of this kind seems to be, that if the owner parts with the custody only, and not with the possession, and the prisoner converts the chattel to his own use, it is larceny, although he had no felonious intent at the time he received it; but if the owner parts not only with the custody, but also with the possession of the chattel, and the prisoner converts it to his own use, it will not be larceny, unless the prisoner had a felonious intent at the time he received the chattel. (2 Russ., 158; 7 Penn. Law Jour., 365; 4 id., 211, bottom paging; *Regina* v. *Wright*, Dearsly & Bell's Crown Cas., 431; id., 440-442; *The Queen* v. *Watts*, 2 Den. C. C., 14; Temple & Mew, 342; 1 Eng. Law and Eq., 558.) And, where a person employed to drive cattle sells them, it is larceny, for he has the custody merely and not the right to the possession (*Rex* v. *McNamee*, 1 Moody C. C., 368), although the intention to convert them was not conceived until after they were delivered to him. (*Regina* v. *Harvey*, 9 C. & P., 353; *Regina* v. *Jackson*, 2 Moody C. C., 32.) So a carter going away with his master's cart was holden to have been guilty of felony. (*Rex* v. *Robinson*, 2 East's Pl. Cr., 565; 2 Deacon's Crim. Law, 750, §§ 46, 47.) If A ask B, who is not his servant, to put a letter in the post, telling him that it contains money, and D breaks the seal and abstract the money, before he puts the letter in the

post, he is guilty of larceny. (*Rex* v. *Mary Jones*, 7 C. & P., 151; *Deakin's Case*, 2 Leach, 870; *Aickles' Case*, 1 id., 302.) So, where a lady asked the prisoner to get a railway ticket for her, and handed him a sovereign to pay for it, which he took, intending to steal, and instead of getting the ticket ran away, it was held to be larceny. (*Regina* v. *Thompson*, L. & C., 225; 32 L. J. M. C., 53.) To the same effect is *Hildebrand* v. *People* (56 N. Y., 394). If a banker's clerk is sent to the money room to bring cash for a particular purpose, and he takes the opportunity of secreting some for his own use (1 Leach, 344), or if a tradesman intrust goods to his servant to deliver to his customer and he appropriates them to himself (*Rex* v. *Bass*, 2 East's Pl. Cr., 566; 1 Leach, 251; *Vale* v. *Bayle*, 1 Cowp., 294), the parties are respectively guilty of larceny. (1 Leach, 270; *Rex* v. *Williams*, 6 C. & P., 390; Cald., 295; *Rex* v. *Brazier*, R. & R., 337; *Regina* v. *White*, 9 C. & P., 344; *Rex* v. *Paradice*, 2 East's Pl. Cr., 565; *Reg.* v. *Heath*, 2 Moody C. C., 33; *Rex* v. *Lavender*, 2 Russ. on Crimes, 160; *Chipchase's Case*, 2 East's Pl. Cr., 567; 2 Leach, 699, S. C.) Where goods have not been actually reduced into the owner's possession, yet, if he has intrusted another to deliver them to his servant, and they are delivered accordingly, and the servant embezzles them, he may be guilty of larceny. (*Rex* v. *Spear*, 2 East's Pl. Cr., 568; 2 Leach, 852, S. C.; *Rex* v. *Abrahat*, 2 Leach, 824; 2 East's Pl. Cr., 569, S. C.; *Regina* v. *Reid*, Dearsly's C. C., 257; *Reg.* v. *Francis Smith*, 1 Car. & K., 423; *Regina* v. *Middleton*, 5 Eng., 406; L. R. [2 Crown Cas.], 38.) The distinction between a custody and a possession, the word possession being used to signify a right of conversion and control of the property for the use of the party, is not new, but is well defined by the old as well as the recent elementary writers. (Alison's Principles and Prac. Crim. Law of Scotland, 251, 252, 229; McDonald's Crim. Law of Scotland, 48–54; 1 Hawkin's Pl. Cr. [Curwood's ed.], 143–146; id. [Leach's ed.], bk. 1, chap. 33, §§ 4–22 [pp. 208–211]; 2 East's Pl. Cr., 564–568; Roscoe's Crim. Ev. [7th Eng. ed.], 617–621; id. [6th Am. ed.], 585–589; 2 Russ. on Crimes [8th Am. ed.], 21–24; Archb. Crim. Pldgs. and Ev. [17th Eng. ed.], 333–340; 2 Bish. Crim. Law [5th ed.], §§ 824, 832, 854–869; Bish. Stat. Crimes, § 635; 2 Whart. Crim. Law [6th ed.], §§ 1840–1846.) And see Mr. Heard's collec-

tion of the cases upon this point (2 Bennett & Heard's Lead. Crim. Cas. [2d ed.], 192–197), and has been repeatedly recognized by the courts of this State. Although every larceny includes a trespass, and cannot exist unless there has been a taking from the possession of another, yet where one having only the care, charge or custody of property for the owner converts it *animo furandi,* it is larceny; the possession, in judgment of law, remaining in the owner until the conversion. It is enough if he converted it *animo furandi.* (*People* v. *Call,* 1 Denio, 120; *Ellis* v. *The People,* 21 How. Pr., 356; *People* v. *Bennett,* 37 N. Y., 117; *Coates* v. *The People,* 4 Park., 662; *People* v. *McDonald,* 43 id., 64; *Cobletz* v. *The State,* 36 Texas, 353; 1 Green's Crim., 646; 36 Texas, 355; 1 Green's Crim. Cas., 647; see, also, *Walker* v. *Commonwealth,* 8 Leigh,743.) Much of the apparent confusion upon the subject has arisen from a loose use of the word " possession," which Bouvier (Law Dict., tit. " Possession ") accurately defines " the detention or enjoyment of a thing which a man holds and exercises by himself or by another who keeps or exercises it in his name. (Crabb Synonyms, tit. " Hold," occupy, possess; see, also, Smith's Synonyms Discriminated, tit. " Possess.") We are masters of what we possess, but not always of what we have. (Graham's Synonyms, tit. " Possess.") Bouvier also points out the difference between actual and constructive possession. (Bouv. Law Dict., tit. " Possession.") It is derived from *possideo,* or *potis* and *sedeo,* signifying to sit as master of; as defined by the civil law, that condition of fact under which one can exercise power over a corporeal thing at his pleasure, to the exclusion of all others. (Wedgwood's Dict. of Eng. Etymology [2d ed.], tit. " Possess.") The counsel for the plaintiff in error invokes a class of cases where the question has arisen whether, where the possession was delivered by a third person to the servant for his master, and he converted the property without ever, for an instant, parting with the actual control thereof, the master ever had any legal possession. Of these may be mentioned: *People* v. *McDonald* (43 N. Y., 64, 65); *People* v. *Bennett* (37 id., 125); 2 East's Pl. Cr., 571; 2 Bish. Crim. Law, §§ 826–829). In such cases, however, a possession by the principal or his agent but for an instant before the property came to the prisoner's possession, or a deposit by the prisoner, but for an instant, in the place where

such articles are usually left by or for the master, has been repeatedly held to be a coming to the possession of the owner. (*Regina* v. *Wright*, Dearsly & Bell's C. C., 431; 2 Bish. Crim. Law, § 830–832; Roscoe's Crim. Ev. [6th Am. ed.], 587–589; 2 East's Pl. Cr., 574; *Rex* v. *Chipchase*, 2 Leach, 699; *Rex* v. *Spears*, id., 826; *Rex* v. *Abrahat*, id., 824; *Regina* v. *Reid*, Dearsly's C. C., 257; *People* v. *McDonald*, 43 N. Y., 65, 66; see, also, *Regina* v. *Middleton*, 5 Eng., 413, *ante*, p. 45.) Even had the defendant acquired the possession instead of the care or custody of the draft, such possession would not have protected him, if, when he obtained it, he did so with intent to steal the same. (3 Burn's Justice [30th ed.], tit. "Larceny," 204–207, and cases there cited; 2 Bish. Crim. Law [5th ed.], §§ 813, 862; 2 Whart. Crim. Law [6th ed.], § 1847; *Regina* v. *Middleton*, 4 Eng., 536; 12 Cox's Crim. Cas., 260; S. C. [opinion of court], 5 Eng., 413, 414; L. R. [2 C. C. Res.], 38; *Regina* v. *Slowly*, 4 Eng., 545; 12 Cox's Crim. Cas., 269; *The State* v. *Thurston*, 2 McMullen, 394–396; *The State* v. *Pleasant Gorman*, 2 N. &. McC., 90; Arch. Crim. Pldgs., 187; *People* v. *Smith*, 23 Cal., 280, 281; *People* v. *Jersey*, 18 id., 337; *People* v. *Poggi*, 19 id., 600.) The point that the prisoner could not be convicted under the counts charging the property in the draft to him, Raines, individually, or as treasurer, was not well taken, or if so, is no ground for a reversal. If he was legally convicted on some of the counts, erroneous rulings as to others could not prejudice him, and would be no ground for a new trial. (*People* v. *Gonzales*, 35 N. Y., 60.) Where goods are delivered to a servant in his master's wagon or other vehicle, he is guilty of larceny if he feloniously takes them. (*Rex* v. *Abrahat*, 2 Leach [4th ed.], 824; *Rex* v. *Spears*, id., 825; *Regina* v. *Reid*, Dearsly's Crown Cas., 227, 262–266; S. C., more fully, 2 Com. Law., 606; *Regina* v. *Bunkall*, 9 Cox Cr. Cas., 419; Leigh & Cave, 371; *Weed* v. *The People*, 10 Alb. Law Jour., 411; 56 N. Y., 628, 629; *Taylor* v. *State*, 48 Ala., 191.) It is the duty of the court, in a criminal case, to decide a question, as a question of law, when there is no conflict in the evidence or dispute as to the facts. (*United States* v. *Susan B. Anthony*, 11 Blatch., 209–212, and cases cited; *People* v. *Bennett*, 49 N. Y., 137.) A judge may, where the evidence is clear and uncontradicted, and the character of the witnesses unimpeached

and unshaken, tell the jury, in a criminal case, that it is their duty to convict. (*Commonwealth* v. *Magee*, 12 Cox's Crim. Cas., 549.) An intent to ultimately repay the money after using it and running the risk of its loss, would not protect the defendant. (2 Whart. Crim. Law [7th ed.], § 1798.) Intending ultimately to repay does not purge the offense of felony. (*Regina* v. *Triblock*, 7 Cox Crim. Cas., 408; Dearsly & Bell, 453; *Regina* v. *Pheteon*, 9 Carr. & Payne, 552; *Commonwealth* v. *Stebbins*, 8 Gray, 492.) A mere pretense of claim, set up by one who does not himself believe it to be valid, does not prevent the act of taking from being a larceny. (*The State* v. *Bond*, 8 Iowa, 540; 2 Bishop's Crim. Law [5th ed.], § 841; *Regina* v. *Hall*, Temple & Mew, 47; 1 Denison's Crown Cas., 381.) The rule is, that if one intends to do what he is conscious the law, which every one is conclusively presumed to know, forbids, there need not be any other evil intent. (2 Bishop's Crim. Law [5th ed.], § 343; *The Queen* v. *Halloway*, 1 Denison's Crown Cas., 376, note; *R.* v. *Phillips and Strong*, 2 East Pl., chap. 16, § 98, vol. 2, p. 662; *Commonwealth* v. *Mason*, 105 Mass., 163; *Commonwealth* v. *Tenney*, 97 id., 58, 59; see, also, *Commonwealth* v. *Coe*, 115 id., 482; *People* v. *McDonald*, 43 N. Y., 63.) If, without color of right, there be added to an intent to commit a trespass, an intent to deprive the owner of his ownership in the thing taken, the offense of larceny is complete. (1 Bishop's Crim. Law [5th ed.], § 342.) No custom or usage by a public officer can authorize the doing of an illegal act by himself or any subordinate. (*Billinger* v. *Gray*, 51 N. Y., 621; *The United States* v. *Hutchinson*, 7 Penn. Law Jour., 369, 370; 4 id., 217 [bottom paging].) The law gave them no right to do so, and defendant was bound to know that such was the law. (*United States* v. *Taintor*, 11 Blatch., 374; *United States* v. *Susan B. Anthony*, id., 200, and authorities cited pp. 210, 211; *Hamilton* v. *The People*, 57 Barb., 625; 2 Whart. Crim. Law [7th ed.], § 1865 *a*.) In this case there was no claim of title, no mistake of facts, and he could not have honestly believed the bills were his property through any misapprehension of law. (*Commonwealth* v. *Doane*, 1 Cush., 5.)

BOOKES, J. :

This case comes before the court on the return to a writ of error.

The plaintiff was convicted at the Albany Oyer and Terminer, October, 1874, of grand larceny, in stealing a draft or written instrument for $7,500, drawn by the Farmers and Mechanics' Savings Bank of Lockport upon the Central National Bank, New York. The draft was forwarded to the treasurer's office, to be credited to the county of Niagara, on account of State tax. The plaintiff in error was a clerk in the treasurer's office, acting under the title of "cashier." He was allowed to receive moneys and drafts for the State, and to deposit the same in bank in the city of Albany; but had no authority to indorse drafts or other commercial paper, nor to make other use of the State funds than to deposit them in the proper bank of deposit. The draft set out in the indictment, and charged to have been stolen, came to the treasurer's office in the regular course of business, indorsed to the order of the "State Treasurer," and was duly entered and credited upon the treasurer's books, and was receipted to the county of Niagara on account of State tax. Instead of making deposit, as was his duty, the plaintiff in error indorsed the draft : " State Treasurer. Per C. H. Phelps, Cashier," and transferred it to a third party in the city of New York, with whom he had private dealings. The State realized nothing therefrom. The jury found him guilty, and he was sentenced to the Albany penitenriary for the term of five years. Various exceptions were taken on the trial, some of which are here urged as grounds of error, and it is proposed to consider those alleged grounds of error, in the order in which they were presented by the prisoner's counsel on the argument. A challenge was interposed to the juror Lamb, which was tried and disposed of by the court, as now provided by statute. (Laws of 1873, p. 681.) The ground of challenge was, that the juror had formed and expressed an opinion as to the prisoner's guilt. After an examination of the juror before the court, the challenge was overruled. The juror stated that he had heard the case talked about; knew there had been a previous trial; had read part of the trial; had expressed an opinion from what he had read ; and if on the jury, would commence the trial with an impression on his mind. On further examination, however, he stated that all he knew about the case

was what he had heard talked, and what he had read in the paper; that its effect was no more than an impression; that such impression would not influence him as a sworn juror; that he·could give a verdict upon the evidence, uninfluenced by any impression he then had; that he verily believed he could render an impartial verdict according to the evidence submitted on the trial; and that his previously formed opinion or impression would not bias, prejudice or influence his verdict. The examination of the juror was somewhat protracted, but the above is the substance of his statements, and brought him within the rule of competency now established by the statute. (Laws of 1872, p. 1133; *Stokes* v. *The People*, 53 N. Y., 173.) His answers showed him to be a man of intelligence, and they were given with fairness, indicating reliable integrity. There was no just ground to suppose him a. prejudiced juror, and the court was well authorized, upon his examination, to conclude that he did not entertain such a then present opinion as would influence his verdict as a juror. (Last clause of Law of 1872.) He was not shown to be incompetent, and the challenge was properly overruled. This conclusion renders it unnecessary to examine other alleged answers to the exception urged upon our attention by the counsel for the people, to wit, that there was no distinct challenge for favor, and that the decision of the court on the question of the juror's competency was final; hence, not subject to valid exception. On this latter point we are cited to several authorities (36 N. Y., 279; 5 Park., 423–4; 49 N. Hamp., 406–7; 16 Ohio St., 330–334; 3 Nevada, 428–430; 47 Georgia, 606; 47 Cal., 395; 75 Penn. St., 424); but the conclusion above declared, renders it unnecessary to give them more than passing notice. A challenge was also interposed to each of the jurors Bailey and Taylor, which was overruled; but no error is here urged based thereon.

It is urged that there is no count in the indictment upon which the conviction can be sustained. The point of this objection is that the indictment is fatally defective, because of the want of an averment that there was money due upon the instrument alleged to have been stolen, or secured thereby, or remaining unsatisfied thereon, or which might, in some event or contingency, be collected thereon. The indictment clearly charges the crime of grand larceny under the statute. It averred the felonious taking and

carrying away of the personal property of another, to wit, a bill of exchange or draft directing the payment of money, $7,500, which, in several of the counts, was set out *in hœc verba,* with indorsements, and fully described in other counts. Such instrument is declared by statute to be personal property, for the purpose of making it the subject of larceny ; and the statute further declares that where the stolen property shall consist of a bill of exchange, draft, order, or other evidence of debt, the money due thereon, or secured thereby and remaining unsatisfied, or which, in any event or contingency, may be collected thereon, shall be deemed the value of the article so stolen. (2 R. S., 679, § 63 ; id., 702, § 33 ; id., 679, § 66.) The effect of these statutes is to make the instruments in sections 33 and 66, mentioned, to stand as " personal property," with a view to secure the punishment of the offender who should steal them ; and their value is declared by law in order to stamp the degree of crime. It was not intended that the averments in an indictment for stealing those instruments, should be different from those charging the larceny of other personal property, save in the matter of description. Here the instrument is set out in some of the counts, and fully described in others, making the description of the property perfect, and in each and every of the counts it is averred to be " of the value of $7,500." This was sufficient as an averment of value in the indictment, and left the case to rest on the proof, and the statute was intended to aid in that respect. All facts necessary to the establishment of the crime were averred. The indictment fully informed the accused of the precise instrument with the stealing of which he was charged, and the law declared its value as therein averred. It is here unnecessary to consider the rules of criminal pleading in the English courts, the technicalities of which are not here strictly observed, when the substance is preserved ; and more especially is this so, in view of the statute of jeofails, in force in this State, which provides that " no indictment shall be deemed invalid, nor shall the trial, judgment or proceedings thereon be affected   *   *   *   by reason of any other defect or imperfection in matters of form, which shall not tend to the prejudice of the defendant." (2 R. S., 728, § 52, and cases cited under this section in Edms. ed.) It is now the settled rule in this State, that the indictment is sufficient, if it aver

all facts necessary to render the charge intelligible in its legal requisites, so as fully to inform the accused of the offense he is called upon to answer. Tested by this rule, the objection to the indictment is manifestly without ground of support. The case must stand or fall on the sufficiency or insufficiency of the proof.

Let it be admitted, as undoubtedly it must be, that it was necessary to a legal conviction in this case to aver and prove the ownership of the property alleged to have been stolen, unless such ownership was unknown (when that also was matter of averment), and there was no error in allowing proof in this case of the making of the draft and its purpose, and of its indorsements and tranfers, and also of the circumstances attending its appropriation and use by the prisoner. In this way was its ownership at the time of the alleged larceny to be determined. Nor was the prosecuting officer bound to elect under which count he would proceed, when the ownership was variously charged in the several counts. (*Davis* v. *The People*, 56 N. Y., 95; *La Beau* v. *The People*, 33 How. Pr., 69; *Nelson* v. *The People*, 5 Park., 39; *Osgood* v. *The People*, 39 N. Y., 449.) The proof shows that the draft came to the treasurer's office in the regular course of business, and was accepted there, to apply on account of State tax. It was so entered in the books of the office. Now, this being so, the draft became the property of the State, or of Thomas Raines as Treasurer of the State; and the ownership was charged both ways in the indictment. Indeed, there is no difficulty in the position that ownership was well averred in each, as against one who should feloniously take and appropriate it to his own use. (*The People* v. *Bennett*, 37 N. Y., 117, 128, 131; *The People* v. *Sherwin*, 2 N. Y. S. C., 528.) It has been repeatedly held in cases where larceny is charged, that whenever a person has a special property in the subject of the larceny, or holds it in trust for another, ownership may be laid in either. Here the ownership of the draft was in the State, with special property in the treasurer. The latter had rights and duties pertaining to it, sufficient to uphold an averment of ownership in him, against one who should take it from him feloniously. Nor is it a matter of any consequence here whether the legal mode of transmitting funds for the payment of State tax was or was not observed. That was a question with which the prisoner had no

concern. The draft was a valid instrument, and if received and accepted by the treasurer on account of State tax, it either became the property of the State, or his property as Treasurer; and whether the one or the other, or even if the Treasurer had but a special property in it, will not affect the legality of the prisoner's conviction under this indictment. It is also sufficient here to say that property was well laid in *the State*, were it necessary so to hold to sustain the conviction. But, as the case is here presented on the facts, this point is not deemed of vital importance.

The above considerations bring us to an examination of the principal question discussed on the argument, to wit: Whether, according to the proof, there was such a felonious taking and carrying away of the draft by the prisoner as to constitute the crime of larceny.

It is a well established rule that a felonious taking of the property alleged to be stolen is essential to the crime of larceny. So, every larceny includes a trespass in the taking. All the cases where this subject is considered so declare. Hence it is deemed little profitable here to collate them. Judge CHURCH says in *The People* v. *McDonald* (43 N. Y., 63), that "it is a well established, but somewhat technical rule, that every larceny must include a trespass, and that the taking must be under such circumstances as that the owner might maintain an action of trespass;" and he adds: "It follows, therefore, that the prosecutor must be in the *actual or constructive possession of the property at the time of the taking.*" This last paragraph shadows forth a distinction, as regards what may, in some cases, be deemed a sufficient possession in law, on which to base a charge of larceny, which is brought prominently before us in the case at bar. Let it be conceded that the prisoner here was principal in the possession of the draft, and trespass would not lie against him for its misappropriation; and, of course, the taking of it by him in that case could not be felonious; but, on the other hand, if his possession was such only as devolved upon a mere servant or clerk, he would be guilty of theft by a felonious taking and conversion. The consideration given this subject, with its distinctions, by Judge CHURCH, in the case above cited, renders it unnecessary to make any extended remarks with a view to an elucidation of the law

applicable to the case in hand. When the position held by the prisoner in the Treasurer's office shall be determined, with the duties devolving upon him, the case will be relieved from much embarrassment. Let us, therefore, examine it with that purpose. He held no official position under any law of the State. He was in no sense an officer of the State. He was employed by the Treasurer as a clerk merely — a trusted, confidential servant, having, as is well stated by counsel, simply the care and custody of the State securities and funds, for a specific purpose — that of deposit. His was but a qualified possession, carrying with it no right of property. He held the securities and funds in or under his custody merely, not for himself, but for his employer. He rendered no account of them, and had no duty in regard to them, save to care for them and place them on deposit for his principal. Had he then any other possession than that of servant with bare charge? Or of a merchant's clerk, of his employer's goods? Or of any hired servant, of the property placed in his charge by his employer? If not, then he could commit theft by a felonious taking and conversion. The draft came into the Treasurer's office, and was in law in his possession, having been credited and receipted to the party entitled to the benefit of the money, directed to be paid by it. The prisoner had but the custody of it for a specific purpose. To adopt the language of the court in the case cited us, " the custody   *   *   * was in the defendant, but the possession in the treasurer. This being the state of affairs, the prisoner converting the chattel to his own use, was guilty of larceny, although he had no felonious intent at the time he received it." (*U. S.* v. *Hutchinson,* 7 Penn. Law Jour., 365.) It has been often held that a clerk who takes money from the till in the store or shop where he is employed, with felonious intent, is guilty of larceny, although he has the right to take it for a lawful purpose. The cases of similar character cited to us by the counsel for the people, in the English courts, are quite too numerous to admit of particular comment here. The rule is declared in a long line of authorities, both in England and in this country, and is well founded in reason, that when the property of a principal or master comes to the hands of his servant for a special purpose, as to deliver it to a third party, or to put it on deposit, the servant will be guilty of theft if he feloniously convert it to his

own use. This rule of law has been recognized repeatedly in our own State. In *The People* v. *Call* (1 Denio, 120), it is said that "although every larceny includes a trespass, and cannot exist unless there has been a taking from the possession of another, yet, where one, having only the care, charge or custody of property for the owner, converts in *animo furandi*, it is larceny; the possession, in judgment of law, remaining in the owner until the conversion." So, in *The People* v. *Bennett* (37 N. Y., 117), it is said that the character of one's possession of property depends upon the tenure by which it is held. "If he were the mere servant of the actual owner, the possession was in such owner, not in him." "While therefore, in the popular use of the term, the servant is said to be in possession of the master's property, yet, in contemplation of law, he has the charge only." And again, in *The People* v. *McDonald* (43 N. Y., 64), it is said that "if money or property is delivered by the owner to a person for mere custody or charge, or for some specific purpose, the legal possession remains in the owner, and a criminal conversion of it by the custodian is larceny." (See, also, *Ellis* v. *The People*, 21 How., 359; *Hildebrand* v. *The People*, 3 N. Y. S. C., 82 [S. C., 1 Hun, 19]; affirmed in Court of Appeals, 56 N. Y., 394; *Weyman* v. *The People*, 4 Hun, 511.)

How, and precisely under what circumstances, the prisoner took the draft in this case does not appear. It came to the Treasurer's office, and entries in the books were made therefrom. Where it was placed, deposited or kept while it remained in the office does not appear. The prisoner had the custody of it, undoubtedly, and the right to make deposit of it in bank. This it was his duty to do as clerk of the Treasurer. But instead, he took and appropriated it to his own use; purloined it. Now, whether such appropriation of the draft by the prisoner was or was not felonious, depended on his intent, and was a question of fact for the jury on the proof. It was for the jury to say whether he acted with intent to steal. The jury found against him, and the verdict is abundantly sustained by the evidence. On this branch of the case there was no error.

A point is made that the draft was not, when stolen, an operative legal instrument. The case shows the contrary of this. It

came to the Treasurer's office, well indorsed to that officer, and the prisoner held a position which enabled him to purloin and use it. It was enough, that he deprived the owner of his property with felonious intent. (2 Leach, 699 ; 3 Chit. Cr. Law, 932.) As regards the admission or rejection of evidence, we find no ground of error. What remains of the case pertains to exceptions interposed to portions of the judge's charge, and to his refusal to charge as requested. These exceptions are disposed of, as is believed, by the previous examination of the case. They pertain to subjects already considered. It may be added that they are to be viewed in the light of the entire charge as delivered, as the judge called especial attention to this fact, and in effect qualified his rulings so as to accord with his views as expressed in the charge.

Thus considered, the submission of the case to the jury seems free from error. The charge of the learned judge was direct and clear in all its parts, and was eminently just and fair in its general tone.

The judgment should be affirmed.

Present — LEARNED, P. J., BOOKES and BOARDMAN, JJ.

Ordered accordingly.